The plaintiff sued on behalf of himself and all other taxpayers of the town of Lenoir, similarly situated, who will come in and make themselves parties. The case grows out of the construction and operation of certain legislation in regard to paying and improving the streets and sidewalks of said town, as contained in its charter (Private Laws 1909, ch. 37); Private Laws 1915, ch. 202, amendatory thereof, and an act passed at the present session of the General Assembly and ratified on 9 January, 1917, and Public Laws 1915, ch. 56, entitled "An act relating to local improvements in municipalities" of the State. The original charter required the streets, bridges, and sidewalks of the town to be kept in repair in the manner and to the extent deemed best by the commissioners, who are vested with the power "to cause owners of lots to make and keep in good repair, at their own expense, sidewalks around their lots and to make rules, regulations, and orders" for this purpose. If the owners, after notice, fail to construct sidewalks or repair the same in such manner and out of such materials as the commissioners may direct, then the latter may cause the same to be done and apportion the cost *Page 186 
thereof between the town and such lot owners "in such ratio" as the commissioners may consider to be just and reasonable, the part of the cost and expense assessed against each owner on account of benefits received to be a lien on his lot along or in front of which such sidewalk is laid, and to be collected as are taxes.
Private Laws 1915, ch. 202, amended the town charter by providing for laying out avenues, streets, alleys, blocks, and lots, and for establishing districts or sections of streets and sidewalks for the purpose of assessment for the permanent improvement of the same. The assessments on adjoining or abutting property for the cost of the improvements are made liens on such property. It requires that the town shall improve the street intersections and pay therefor out of its general fund, and for the improvement of the streets it shall pay one-third of the cost and expense and one-half of the cost of improving the sidewalks, also out of its general fund. The court-house square is constituted a separate taxing district for the improvement of which the (140) town pays one-half and the abutting owners the other half. Provision is made for equalizing the assessments, for notice to the owners of the amounts assessed against each of them or their lots, and for payment of the same by the owner, and if not made, then for the collection of the same by the tax collector by sale. It is provided further that the town's share of the expense of all improvements made by contract or otherwise shall be paid out of the general fund, and not otherwise. The last section of this statute provides that it shall not take effect, or be in force, until its provisions have been approved by a majority of the people at an election to be held as therein prescribed, at which the question shall be "For change of charter" or "Against change of charter," and that if a majority vote against the change of the charter, the statute shall be void.
The statute of 1917 amends chapter 202 of Private Laws of 1915 by striking out all the provisions as to the payment of the city's share of the cost and expense of improvement "out of the general fund," as they appear in article 1 of the act, and by changing the mode of paying the assessments against property and by striking out all of article 3, which provides for the election. It then declares that "The provisions of sections 12, 14, 15, 16 and 17 of chapter 56 of the Public Laws of North Carolina, Session of 1915, be and they are hereby declared to be applicable to the said town of Lenoir as fully to all intents and purposes as though the said sections were set forth herein." Section 12 of the Public Laws of 1915, ch. 56, mentioned in the act of 1917, provides that the authorities of a town "may by resolution authorize its treasurer to borrow money to the extent required to pay the cost of any such (local) improvement or to repay any money borrowed under this section, with *Page 187 
interest thereon," and "provide for the issue of notes or certificates of indebtedness of the municipality, or both, payable either on demand or at a fixed time, not more than six months from the date thereof and bearing interest not exceeding 6 per centum per annum," which may be sold publicly or privately, or pledged as security for temporary loans, as may be directed by resolution of the governing body, and, further, that "any temporary indebtedness incurred hereunder, and interest, may be paid out of moneys raised by the issue and sale of local improvement bonds, or assessment bonds, or both, to be issued and sold as hereinafter provided, or may be included in the annual tax levy." Section 15 authorizes the issuing of assessment bonds by the town to pay in advance the cost of the improvement to the amount of the assessment against abutting property; and, further: "All moneys derived from the collection of assessments upon which assessment bonds are predicated, collected after the passage of the resolution authorizing such bonds, shall be placed in a special fund, to be used only for the payment (141) of the principal and interest of assessment bonds issued under this act; and if at the time of the annual tax levy for any year in such municipality it shall appear that such fund will be for any cause insufficient to meet the principal and interest of such bonds maturing in such year, the amount of the deficiency shall be included in such tax levy. The amount of the assessments for two or more improvements may be included in a single issue of assessment bonds." Section 16 prescribes the form and mode of execution of the assessment bonds, with the date of payment, and it and section 17 thus provide: "The bonds may be sold at public or private sale, but for not less than their par value. They shall recite that they are issued pursuant to the authority of this act and of the resolution authorizing the issuance thereof, which shall be conclusive evidence of their validity and of the regularity of their issuance. The full faith and credit of a municipality shall be pledged for the payment of the principal and interest of all of its local improvement bonds, assessment bonds, notes, and other obligations issued under this act. For the purpose of paying such principal and interest the governing body shall have power to levy sufficient taxes upon all the taxable property in the municipality and to borrow money temporarily upon notes of the municipality in anticipation of taxes of the same or the succeeding fiscal year." Section 2 and section 4 of chapter 56 of the public Laws of 1915 read as follows:
"Sec. 2. This act shall apply to all municipalities. It shall not, however, repeal any special or local law or affect any proceeding under any special or local law, for the making of street, sidewalk, or other improvements hereby authorized, or for the raising of funds therefor, *Page 188 
but shall be deemed to be additional and independent legislation for such purposes and to provide an alternative method of procedure for such purposes, and to be a complete act, not subject to any limitation or restriction contained in any other public or private law or laws, except as herein otherwise provided."
"SEC. 4. Every municipality shall have power, by resolution of its governing body, upon petition made as provided in the next succeeding section, to cause local improvements to be made and to defray the expense of such improvements by local assessment, by general taxation, and by borrowing, as herein provided. No petition shall be necessary, however, for the ordering or making of private water, sewer, and gas connections as hereinafter provided. Nor shall a petition be necessary for the making of sidewalk improvements in those municipalities in which by other law or laws sidewalk improvements are authorized to be made without petition."
(142) It is admitted that Public Laws 1915, ch. 56; Private Laws 1909, ch. 37, and Private Laws 1915, ch. 202, were passed, as roll-call bills, in accordance with Constitution, Art. II, sec. 14, and that the act of 1917 was not so passed.
Plaintiff alleges in his complaint:
"7. Since the passage of said act of 9 January, 1917, the commissioners of the defendant town of Lenoir have ordered that the public square from its intersections with North, East, South, and West Main streets in said town, be permanently improved by paving same with concrete or other suitable material, in compliance with the provisions of said act of 9 January, 1917, and have given notice in a newspaper published in the town of Lenoir of such order, as set forth in chapter 202, Private Laws 1915, and have authorized the issuance of notes of said town to pay for the cost of said paving and advertising and offering to sell said notes to an amount not to exceed $50,000, and have by ordinance provided for the levy of a tax for the payment of said notes.
"8. Plaintiff is a citizen and taxpayer of said town, and complains as well for himself as for other taxpayers similarly situated, and is likewise a property owner in said town, having a lot which abuts upon the public square of said town and also on Mulberry Street, and said commissioners now purpose to pave said public square under the provisions of said chapter 202, Private Laws 1915, as reenacted by the act of 9 January, 1917.
"9. By the ordinance adopted by defendant town under color of the acts above mentioned, plaintiff, if required to comply therewith, will be obliged to lay out and expend large sums of money in payment for such paving and will likewise be required to pay large sums of money as taxes *Page 189 
for the payment of the notes that will be issued for the payment of the principal and interest due upon said notes so proposed to be issued for the payment thereof, and the bonds thereafter to be issued for the funding of said notes. That the total indebtedness of the said town, after the issuing of the said notes or bonds in the sum of $50,000, will exceed the sum of 10 per cent of the assessed taxable property within said town.
"Plaintiff further alleges that the said action of said board in ordering said improvement was not based upon a petition of the property owners abutting on said public square, as provided in chapter 56, Public Laws 1915."
The allegations are admitted in the answer to be true.
The plaintiff alleges that the action of the defendant will be illegal, for the following reasons: (a) Chapter 202, Private Laws 1915, was passed as a `roll-call bill,' and cannot be revived or reenacted by one not passed in the same manner. (b) The levying of an assessment (143) upon plaintiff's property to pay for the improvements contemplated by defendant on the public square or streets abutting his property, under the provisions of chapter 202, Private Laws 1915, as attempted to be revived by the act of 9 January, 1917, is the levying of a tax by defendant town, and since said act of 9 January, 1917, was not passed as a `roll-call bill,' the said assessment is and will be invalid. (c) By reason of the act of 9 January, 1917, not being a `roll-call bill,' any tax levied to pay notes issued by the said town for the payment of its portion of the costs of improvement, or the bonds to be issued for the retirement of said notes, is and will be unauthorized, illegal, and void. (e) That the proposed increase of municipal indebtedness of defendant in an additional sum of $50,000 for the purposes hereinbefore set forth is for a special purpose and will increase the limit of defendant's indebtedness beyond that fixed by section 2977 of the Revisal, and such indebtedness will, therefore, be unauthorized."
The prayer is: "That defendant town of Lenoir be permanently enjoined and restrained from acting or attempting to act under the provisions of the said chapter 202, Private Laws 1915, and from selling or attempting to sell any bonds or issuing any notes for the payment of obligations incurred for street paving, or from acting or attempting to act under the provisions of the act of 9 January, 1917, and for general relief."
The judge, at the hearing, refused to grant the injunction, and plaintiff appealed.
The first questions are whether chapter 202 of the Private Laws of 1915 was in force when the act of 1917 was passed, and whether the last named statute was properly passed and is a valid enactment for the purposes therein set forth. It appears from the above recital of the several statutes, or the substance of them, that the provisions of chapter 202 were required to be submitted to the people for their approval or disapproval, and that it was not to have any force or effect until this was done and a majority of the voters cast their ballots in favor of their adoption and thereby authorized the change in the charter proposed to be made by them. It is not open to question now that the Legislature may provide that a statute shall not take effect or be in force until approved by the people at an election to be held for the purpose of ascertaining their will in respect thereto. That this can be done has been settled by numerous decisions of this Court, whatever may be the rule in other (144) jurisdictions. This question was fully considered by the Court in Manly v. City of Raleigh, 57 N.C. 370, and the Legislature's power to pass such a statute was clearly demonstrated by Chief Justice Pearson
in an exhaustive opinion, and it was said that Thompson v. Floyd,47 N.C. 313, directly supports the conclusion reached by the Court. InCain v. Comrs., 86 N.C. 8, at p. 13, Chief Justice Smith says: "It has not been seriously questioned that the Legislature may make an enactment to take effect only upon the happening of a contingent event; but it has been earnestly maintained that when the event is the expression of the popular will, ascertained by an election, it is in effect a transfer of legislative power to the voters. In reference to this distinction, Redfield, C. J., in an elaborate opinion delivered in S.v. Parker, 26 Vt. 357, says that `The distinction attempted between the contingency of a popular vote and other future contingencies is without all just foundation in sound policy and sound reasoning.' Whatever differences may be found in the adjudications elsewhere, it is settled by the decision in Manly v. Raleigh, 57 N.C. 370, that such power may be exercised by the Legislature, and it is declared that `When it is provided that a law shall not take effect unless a majority of the people vote for it, or it is accepted by a corporation, the provision is in effect a declaration that in the opinion of the Legislature the law is not expedient unless it be so voted (or accepted).' This principle underlies all `local option' legislation and is fully recognized and established in this State," citing Caldwell v. Justices, 57 N.C. 323. The same learned judge said in Evans v. Comrs., 89 N.C. 154, at p. 158: "This provision leaves the Legislature free to confer upon municipal organizations, the power to create debts and issue public securities in order to raise funds to meet those *Page 191 
`necessary expenses' when it may be deemed expedient, and the legislation may be made dependent on the result of a popular vote for its efficacy," citing Manly v. City of Raleigh, supra; Newson v. Earnheart,86 N.C. 391; Hill v. Comrs., 67 N.C. 367. There having been no election as provided for in chapter 202 of the Private Laws of 1915, that statute is not in force, and has not been since its enactment, except for the purpose of holding an election, as therein required, to ascertain if the people approved it. A favorable vote of the people was the condition upon which its provisions should take effect, and this condition has not been complied with. That act being out of the way, we come to the next question, Has the act of 1917 any validity? It was evidently intended to operate as a whole, as a scheme for making improvements in the town, and contracting debts, and levying taxes, when necessary, or expedient, to execute the intention and purpose of the act. Authority is expressly given to do so, and the town authorities (145) actually intend to contract a debt and to levy taxes. The act of 1917 incorporates certain sections of chapter 56 of Public Laws of 1915, which confer broad and almost unlimited power to borrow money, issue bonds or notes, with interest, to be paid by the proceeds of the sale of "local improvement bonds or assessment bonds, or by an annual tax levy." The fact that this indebtedness may, perhaps, be ultimately discharged from the sale or collection of assessment bonds does not change or alter its character as an independent indebtedness of the town. We so held in Charlotte v. Trust Co., 159 N.C. 388. The act expressly provides that the governing body "may issue notes or certificates of indebtedness of the municipality." These obligations, therefore, are those of the town, however they may be secured by collaterals or paid at maturity. In the case just cited it is said: "The act directs the board of aldermen to issue bonds of the city and sell them. The use of the word bond exvi termini implies that the city is bound. As said by the United States Supreme Court in Davenport v. County of Dodge, 105 U.S. 237
(26:1018), a `Bond implies an obligor bound to do what is agreed shall be done.' Also, in Morrison v. Township of Bernards, 25 N.J. Law, 219,Chief Justice Beasley, speaking of the force and effect of a direction in the statute that the township issue `bonds,' says: `A similar implication, but one of greater force, arises from the direction that bonds are to be given under the hands and seals of the commissioners, for an instrument of that kind cannot be created without the presence of an obligor; and, indeed, it seems like a solecism to say that the statute calls for the making of a bond, but that nobody is to be bound by it.' Not only that, but it is also held by the authorities that when the word `bond' is used in connection with municipal obligations, designating what is commonly *Page 192 
called `municipal bonds,' then this means negotiable bonds. This is expressly held in Nalle v. City of Austin, 22 S.W. 668. See, also,McCless v. Meekins, 117 N.C. 34; Charlotte v. Shepard, 122 N.C. 602." The act of 1917 is, therefore, clearly within the requirement of Constitution, Art. II, sec. 14, that "No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or allow the counties, cities, or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the General Assembly and passed three several readings, which readings shall have been on three different days and agreed to by each house respectively, and unless the years and nays on the second and third readings of the bill shall have been entered on the journal." The section was construed in Cotton Mills v. Waxhaw, (146) 130 N.C. 293, where the Court held: "This section of the Constitution makes no distinction whatever between `necessary expenses' and unnecessary or extraordinary expenses, and we have no power to create any such distinction by judicial construction. Such a distinction is made only in Article VII, sec. 7, which is as follows: `No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein.' We are, therefore, compelled to hold that no city or town can levy any tax or incur any debt for any purpose whatever unless the act authorizing such tax or debt is passed in accordance with the provisions of Article II, sec. 14, of the Constitution. Therefore, the charter of the town of Waxhaw, not having been so passed, confers no power of taxation."
The object in referring to certain sections of the public act of 1915 by their numbers was to incorporate them with the act of 1917 as a part of it, and to avoid the necessity of setting them out at full length or even extensively.
Our conclusion, therefore, is that chapter 202 of Private Laws of 1915 had never been in force and effect, and that the act of 1917 is within that class of statutes which are required to be read and passed in accordance with Constitution, Art. II, sec. 14, and this not having been done, it is not valid. Its character as a valid or invalid statute was not affected by the fact that chapter 56 of the Public Laws of 1915 was passed in compliance with Constitution, Art. II, sec. 14. The result is that the town of Lenoir may fall back upon its original charter of 1909, or it may, and we are inclined to the opinion that it can, proceed under chapter 56 of the Public Laws of 1915, if it chooses, in making *Page 193 
its local improvements; but it must comply with the provisions of that act in doing so.
As chapter 202 of the Private Laws of 1915 has had no vitality except for the purpose above indicated, it is apparent that the cases cited by the defendant's counsel (Robinson v. Goldsboro, 122 N.C. 214; Lutterloh v.Fayetteville, 149 N.C. 66) have no application to the question. In those cases the original statutes were in full force and effect in all their parts, and were not dependent for their operation upon any vote of the people or other condition. They were in full force for all purposes designated in them from the day that they were ratified.
Counsel argued that the legislative will could not be defeated by the failure of the town officers to order and hold an election as required by the private act of 1915. This is not the question. The fact is that the election has never been held, and the Legislature had the power to declare, and did declare, that the act should have no force or (147) effect until ratified by the people at the polls. If it be said that the Legislature could strike out the provision as to the election, by the amendment of 1917, the answer is that it would be then undertaking to confer a new and unconditional power to contract debts and levy taxes, which was not done by the private act of 1915, and the act of 1917 for this reason should have been passed according to the requirements of Constitution, Art. II, sec. 14, and especially so when it originally granted a very broad power of contracting debts and levying taxes by adopting the sections of Public Laws of 1915, ch. 56, specified therein. We may also state that Public Laws of 1915, ch. 56, not only authorizes the contracting of a debt, the issuing of notes and bonds, and the levying of taxes, but by section 17 the full faith and credit of the town are pledged for the payment of all bonds, notes, and other obligations under the act. The amendment of 1917 created an absolute and unqualified power to tax and contract debts not given by the private act of 1915, which was a conditional one. Whether the town can proceed under Private Laws of 1915, ch. 202, to order an election is not before us, as it has not done so heretofore, and the act is not in force without it.
In any view of the case, we think the result we have reached is correct. There was error in refusing the injunction.
Error.
Cited: Guire v. Comrs. of Caldwell, 177 N.C. 518; Penland v. BrysonCity, 199 N.C. 146. *Page 194