JOSHUA LEVERING ET AL.

*vs.*

# THE BOARD OF SUPERVISORS OF ELECTIONS OF BALTIMORE CITY.

*Mandamus—To Supervisors of Elections—General and Local Legislation—Submission to Electorate—Sunday Law.*

Mandamus is, in Maryland, allowed as a preventive remedy, as well as to require the performance of a definite specific act.

p. 286

The Board of Supervisors of Elections of Baltimore City, though neither a natural nor artificial person, may be proceeded against by mandamus in its capacity as a board.     pp. 286, 287

The Legislature is a representative body for the purpose of making laws, and it discharges its duty in a representative, delegated capacity, and, as a general rule, it is without power to delegate either to a portion or class of the community the exercise of the very power for which it was selected by the people.

p. 288

The Legislature may, where a proposed law is local in its operation and effect, submit it for approval or disapproval to the people of the locality to be affected.     p. 288

A general law cannot be repealed or enacted by a delegation, to the people of a portion of the State, of a matter which has always been regarded as a concern of the people of the entire State, and by the original framers thereof placed among the general laws of the State.     p. 290

Acts 1920, Ch. 522, repealing, re-enacting, and amending Code, Art. 27, Secs. 436 and 438, under the sub-title "Sabbath Breaking," and allowing the exhibition of motion pictures in Baltimore City after 2 P. M. on Sundays, is a general and not a local law, and is consequently invalid by reason of the provision thereof which makes it subject to the approval of the qualified voters of Baltimore City.     pp. 287, 290

*Opinion filed December 2nd, 1920.*

Appeal from the Superior Court of Baltimore City (SOPER, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Isaac Lobe Straus,* for the appellants.

*Alexander Armstrong, Attorney General,* with whom was *Lindsay C. Spencer, Assistant Attorney General,* on the brief, for the appellee.

*Joseph C. France* and *Alfred S. Niles,* with whom was *H. Webster Smith* on the brief, for certain persons interested in the motion picture business.

STOCKBRIDGE, J., delivered the opinion of the court.

On the day following the argument of this case there was handed down a *per curiam* opinion, in the following language: "Without now referring to other questions involved in the appeal in this case, the court being of the opinion that the Act of 1920, Chapter 522, deals with the repeal, re-enactment and amendment of a Public General Law of the State, and that the question of the repeal, re-enactment and amendment of a public general law is not susceptible of being subjected to the referendum proposed by this Act, it is ordered by the Court of Appeals of Maryland this 15th day of October, 1920, that the judgment of the Superior Court of Baltimore City in this case be reversed and that the case be remanded to the end that the writ of mandamus be issued as prayed.

"An opinion will be hereafter filed stating the grounds of the court's conclusion."

This course was rendered necessary by reason of the urgent need for action in connection with the then approaching election.

There were a number of questions argued before the court, and elaborately set out in the briefs of the counsel for the appellant and the Attorney General on behalf of the appellee. It is not necessary to discuss in this opinion all of the points urged upon the court, and this is not for the reason that they are not of importance, but because, however important they may be, there are other matters of still greater moment upon which the decision of the case turns, and which of necessity are controlling.

The first questions which arise relate to matters of practice in mandamus cases. The suit was instituted in the Superior Court of Baltimore City, asking that court, by an issuance of the writ of mandamus, to command the Supervisors of Elections of Baltimore City to omit from the official ballot, to be voted on at the November elections of 1920, a submission to the people of Baltimore City of the question whether moving picture shows, whether with or without a charge for admission, might or might not be exhibited after the hour of 2 P. M. on Sundays, the submission to the voters of the city being claimed to result from the terms of an Act of 1920, Chapter 522. That act reads in full as follows:

> "AN ACT to repeal and re-enact, with amendments, Article 27, Sections 436 and 438 of Bagby's Code of 1914, entitled 'Crimes and Punishments,' sub-title 'Sabbath Breaking,' and providing additional license fees for Sunday exhibitions of motion pictures in Baltimore City, with or without charge or admission fee.
>
> "Section 1. *Be it enacted by the General Assembly of Maryland*, That Article 27, Sections 436 and 438 of the Public General Laws of Maryland, as codified in Bagby's Code of 1914, entitled 'Crimes and Punishments,' sub-title 'Sabbath Breaking,' be and the same are hereby repealed and re-enacted so as to read as follows:
>
> "436. No person whosoever shall work or do any bodily labor on the Lord's Day, commonly called Sunday; and no person having children or servants shall

command, or wittingly or willingly suffer any of them
to do any manner of work or labor on the Lord's Day
(works of necessity and charity always excepted), nor
shall suffer nor permit any children or servants to pro-
fane the Lord's Day by gaming, fishing, fowling, hunt-
ing or unlawful pastime or recreation; and every per-
son transgressing this section and being thereof con-
victed before a justice of the peace shall forfeit five
dollars, to be applied to the use of the county; pro-
vided, however, that nothing contained in this section
shall be construed as to declare unlawful the exhibi-
tion of motion pictures after 2 o'clock P. M. on Sun-
day in Baltimore City, with or without a charge or an
admission fee, where the exhibitors thereof have com-
plied with the provisions of Article 27, Section 438 of
the Public General Laws of Maryland, as amended by
this Act.

"438.   It shall not be lawful to keep open or use
any dancing saloon, opera house, tenpin alley, barber
shop or ball alley within this State on the Sabbath
Day, commonly called Sunday; and any person or per-
sons or body politic or corporate, who shall violate any
provision of this section, or cause or knowingly per-
mit the same to be violated by a person or persons in
his, her or its employ shall be liable to indictment in
any court of this State having criminal jurisdiction,
and upon conviction thereof shall be fined a sum not
less than fifty dollars nor more than one hundred dol-
lars in the discretion of the court, for the first offense;
and if convicted a second time for a violation of this
section, the person or persons, or body politic or cor-
porate shall be fined a sum not less than one hundred
nor more than five hundred dollars; and, if a natural
person, shall be imprisoned not less than ten nor more
than thirty days in the discretion of the court; and in
the case of any conviction or convictions under this
section subsequent to the second, such person or per-
sons, body politic or corporate shall be fined on each
occasion at least double that imposed upon him, her,

them or it on the last preceding conviction; and if a
natural person, shall be imprisoned not less than thirty
nor more than sixty days in the discretion of the court;
all fines to be imposed under this section shall be paid
to the State. Provided, that in addition to such license
fees as may now be payable therefor before any such
exhibition shall be given in Baltimore City there shall
be paid the Clerk of the Court the following license
fees, to wit: There shall be charged for each year a
minimum license fee of $100 for any moving picture
house with a seating capacity of one hundred people
or less and an additional license fee of $1.00 per seat
for each and every seat within any such moving pic-
ture house having over one hundred seats, up to and
including fifteen hundred seating capacity and no more.
And provided further, that the price or charge for ad-
mission shall on no occasion, performance or showing
of a moving picture be a greater charge on Sunday than
that made for admission on weekdays.

"Sec. 2. *And be it further enacted,* That this Act
shall at the general election to be held on the Tuesday
after the first Monday of November, 1920, be submit-
ted to the legal and qualified voters of the City of
Baltimore for their approval or rejection.

"The Supervisors of Elections of the City of Balti-
more shall have printed upon the ballots to be used at
the said election in November, 1920, the following
proposition:

"Shall the present laws be amended to permit mo-
tion pictures on Sunday?

"After this there shall be printed on the ballot the
following:

"For Motion Pictures on Sunday.

"Against Motion Pictures on Sunday.

"The Supervisors of Elections of the City of Balti-
more shall canvass the returns and certify the number
of votes cast for and against amending the Sunday
laws in like manner as other election returns. If a
majority of the votes cast in the City of Baltimore is

against amending the Sunday laws, then the present laws relating to Sunday observance in so far as they might prohibit the exhibition of motion pictures shall continue in full force in said city. If a majority of the votes cast in the City of Baltimore is in favor of amending Sunday laws as provided in this Act, then this Act shall become effective from said date in said city, it being the purpose of this Act to give the voters of the City of Baltimore the right to determine whether the present Sunday laws shall continue in force or whether they shall be amended as provided in this Act.

"Approved April 16, 1920."

The position and argument of the Attorney General, representing the appellee, was that the remedy sought to be obtained was one which, if available at all, could only be had by a bill in equity asking for an injunction; second, that the defendant named in the petition was the Board of Supervisors of Elections of Baltimore City, which was neither an individual, nor a corporation, and was, therefore, not liable to such a proceeding.

With regard to the first of these contentions it is sufficient to say, that while the purpose of the writ of mandamus is undoubtedly to require the defendant named to do a positive act, and injunction the proper remedy to prevent the doing of that act, yet in previous instances the courts have not always adhered to this distinction, and mandamus has been allowed as a preventive remedy, as well as to require the performance of a definite, specific act, and those decisions have appeared in cases upon which this Court has already passed; so that this objection to the writ in the form in which it is now invoked cannot be regarded as any longer an open question in this State.

It is perfectly true that the Board of Supervisors of Elections is neither a natural nor artificial person, and that it is not a corporation. The fact remains, however, that it is an

agency of the government of this State, whereby elections are carried on, and though the personnel of the board may change from time to time, and as in this case such a change may intervene between the time of the filing of the petition and the hearing of the case, the board as a board, for the purposes for which it is designated in the election law, is and continues to remain an agency of the State, and as such is liable to be proceeded against.

A similar application for a writ was made in the case of *Levering* v. *Board of Supervisors of Election*, 129 Md. 335, and while the precise point now under consideration does not appear to have been expressly urged or ruled on in that case, the action of the court in deciding it must be deemed and taken as an approval of the form of the proceeding, and that the board might be proceeded against by way of a mandamus in its capacity as a board without being incorporated, and though it was neither a natural nor artificial person, such as a corporation.

The next element to be considered, and the most important one in this case, is whether the Act of 1920, already set out, was a general or local law. It is virtually conceded that if it is a general law it is unconstitutional, and therefore, void; whereas, if it be regarded simply as a local law, then under numerous decisions in this State it is perfectly valid. Under the view taken of the Act by the judge of the Superior Court of Baltimore City, it is a local law merely, and, therefore, he dismissed the application for the mandamus. In that view this Court cannot agree.

Numerous cases have been cited under a wide variety of circumstances, where the effect of the act was purely of a local character, and the submission of the question to the voters of a single locality or political sub-division of the state has been approved. These are cases which operate only on the residents or voters of the territory to be affected by the modification of the law. A case similar to this in many ways was the case of *People* v. *Stout*, 23 Barb. (N. Y.) 349, where

the act involved, proposed nominally as an amendment to the charter of New York, and which provided that a submission of the question therein raised to the voters of New York City should be held to be the law of the state, and the court of New York in that case held the act invalid for the reason that it was in effect making the determination of a state-wide law dependent upon the will of a portion of the residents of the state only. See also *Bradshaw* v. *Lankford,* 73 Md. 431.

A number of cases have gone further than this and held that it is beyond the power of the Legislature in the exercise of its law-making function to delegate that power to the people. Such a result is reached from the very form and framework of our theory and system of government, under which the Legislature is a representative body for the purpose of making laws, and it discharges its duty in a representative, delegated capacity, and is without power to delegate either to a portion or class of the community the exercise of the very power for which it was selected by the people. See *State* v. *Hayes,* 61 N. H. 264 and *Opinions of the Justices to the House of Representatives,* 160 Mass. 586.

A different principle controls where the act in question is local in its operation and effect only, and where the locality to be affected may by referendum approve or disapprove of the proposed law. Cases of this character are the large mass of cases arising under what are known as local option laws, by which the sale or licensing for sale of liquors in a particular locality is forbidden. These laws, because of their peculiar local application, have been uniformly upheld. *Hammond* v. *Haines,* 25 Md. 541; *Fell* v. *State,* 42 Md. 71; *Slymer* v. *State,* 62 Md. 237; *Mitchell* v. *State,* 115 Md. 360; *Crouse* v. *State,* 130 Md. 364; *Poisel* v. *Cash,* 130 Md. 373; *Comm.* v. *Bennett,* 108 Mass. 27; *Comm.* v. *Dean,* 110 Mass. 357 and many others.

In the same category are such cases as those which relate to county roads (*State* v. *Baltimore County,* 29 Md. 516); establishment and maintenance of primary schools (*Burgess* v. *Pue,* 2 Gill, 11) ; compensation of justices of the peace for

a given county (*Herbert* v. *Baltimore County,* 97 Md. 639) ; the removal of a county seat from one point to another in the same county (*Hamilton* v. *Carroll,* 82 Md. 326; *Stanton* v. *Board of Supervisors,* 191 N. Y. 428).

It is frankly admitted by the Attorney General that if the act now in question is a general and not a local law, that it is invalid, since it is made to become effective, not upon the vote of the entire electorate of the State, but upon the vote of only a portion of that electorate. In other words, that the entire population of the State is to be subjected to the operation of a law upon the vote of only a fraction of those to be affected by it. The soundness of this proposition cannot for a single moment be questioned. It needs no citation of authorities to support it, though they might be given in large numbers. See *Bradshaw* v. *Lankford,* 73 Md. 431.

It is of course perfectly evident that the Legislature itself could have acted directly upon the subject matter without a referendum or attempt to delegate to the electorate of the city control of the matter involved in the act under consideration. The case of *Levering* v. *Supervisors,* 129 Md. 335, is scarcely in point here, since in that the referendum proposed to be submitted emanated from a municipal ordinance, not an Act of the Legislature.

An effective way to do that which was attempted in this case is to be found in the Act of 1904, relating to the tax on mortgages, under which a general law operating throughout the state was restricted in its application to certain counties therein named. The effect of this Act of 1904 was undoubtedly to convert that which theretofore had been a public general law into a local law, by exempting the City of Baltimore and certain named counties from the provisions of the general law. Contrast with this the act now under consideration, which in terms repeals two sections of the general law of the state applicable alike to Baltimore City and to all of the counties, and then enacts the same with an amendment applicable only to Baltimore City, and makes this dependent

upon a submission to the voters of Baltimore City alone. But the act did not stop at this point.

If the repealing language of the act had stood alone, it would have had the result of placing, in the hands of a portion of the electorate of the State only, the ultimate fate of the legislative action, which, as already indicated, would have been a gross violation of the principle of law applicable in such cases. But the act was not content merely with repealing, but proposed positive legislation, to become effective in like manner as the result of a referendum to part only of the voters of the State, and yet it was to affect the counties not less than Baltimore City, but in a different manner.

The title of the act aptly described the contents of the act which followed, and the enacting clause was drawn with like precision, so both in the title and the enacting clause of the act, we find the object of it to be as already mentioned.

There was considerable argument, pro and con, with regard to the referendum contained in the act, and that presents a matter with which this Court is not now immediately concerned, and no opinion is expressed in regard thereto.

The intent and scope of the amendment to the Constitution of the State, commonly designated as the Home Rule Amendment, is not necessarily involved in the present case, and this decision is based upon the ground, and solely upon the ground, that a general law of this State cannot be repealed or enacted by a delegation, to the people of a portion of the State, of a matter which has always been regarded as a concern of the people of the entire State, and by the original framers thereof placed among the general laws of the State.

> *For the reasons stated the case was reversed and remanded in the per curiam heretofore filed.*