HAJOCA CORPORATION, a Delaware Corporation v. I. L. CLAYTON, Commissioner of Revenue of the State of North Carolina, Defendant
— AND —
COUNTY OF BUNCOMBE and CITY OF ASHEVILLE, N. C., Additional Defendants

No. 36

(Filed 20 January 1971)

1. Taxation § 2— discrimination for or against taxpayers in same classification

The Constitution does not permit a state to levy a tax which discriminates in favor of or against taxpayers in the same classification; therefore, the State cannot levy a tax in 25 counties and exempt 75 counties or set up a valid scheme by which that precise result is accomplished.

2. Counties § 6— power to levy taxes

Counties do not have the inherent power to levy taxes but derive their taxing power from the State Constitution or from the State's legislative enactments.

3. Taxation §§ 2, 15, 31— "Local Option Sales and Use Tax Act" — State tax — unconstitutionality

The additional 1% sales and use tax authorized by the "Local Option Sales and Use Tax Act," Chapter 1228, Session Laws of 1969,

Hajoca Corp. v. Clayton, Comr. of Revenue

is a State tax, not a county tax, and is unconstitutional since it is not uniformly applied to all taxpayers of the same class in all counties of the State.

Chief Justice BOBBITT dissenting.

Justices SHARP and MOORE join in dissenting opinion.

APPEAL by plaintiff from *Martin, J.*, June 11, 1970 Session, BUNCOMBE Superior Court.

The plaintiff, a Delaware corporation dealing in plumbing fixtures, is domiciled in North Carolina. Its principal place of business is located in Buncombe County. The original defendant is the North Carolina Commissioner of Revenue. The plaintiff instituted this civil action in the Superior Court of Buncombe County to recover $1,170.14, paid under protest, as a sales and use tax exacted by the defendant under Chapter 1228, Session Laws of 1969 (G.S. 105-164.45).

The complaint alleges the levy and collection of the tax are illegal and discriminatory, in violation of the plaintiff's rights under Article I, Sections 17 and 31; Article II, Section 29; Article V, Sections 3 and 5 of the North Carolina Constitution, and the Fourteenth Amendment to the Constitution of the United States.

The complaint and the brief allege the particulars in which the tax exacted from the plaintiff under Chapter 1228 violates its constitutional rights. The sum of $436.41 was exacted from the plaintiff as a sales and use tax when the sale and delivery were made in counties which did not levy the tax. The plaintiff, a dealer in a taxing county, was forced to pay the tax in all counties of the State when its competitors living in non-taxing counties are not required to pay any tax in any county.

Pertinent parts of Chapter 1228, Session Laws of 1969, are here quoted:

"It is the purpose of this Act to provide the counties and municipalities of this State with an added source of revenue and to assist them in meeting their growing financial needs by providing that counties may by special election adopt and levy a one per cent (1%) sales and use tax as hereinafter provided.

\*        \*        \*

"The board of elections of each county shall call and conduct a special election on Tuesday, November 4, 1969, for

Hajoca Corp. v. Clayton, Comr. of Revenue

the purpose of submitting to the voters of each such county the question of whether a one per cent (1%) sales and use tax as hereinafter provided will be levied.

\*     \*     \*

"G.S. 105-164.51. Sales tax imposed; Limited to items on which the State now imposes a 3% sales tax. The sales tax which may be imposed under this division is limited to a tax at the rate of one per cent (1%) of: (1) the sale price of those articles of tangible personal property now subject to the three per cent (3%) sales tax imposed by the State under G.S. 105-164.4(1); (2) the gross receipts derived from the lease or rental of tangible personal property where the lease or rental of such property is an established business now subject to the three per cent (3%) sales tax imposed by the State under G.S. 105-164.4(2); (3) the gross receipts derived from the rental of any room or lodging furnished by any hotel, motel, inn, tourist camp or other similar public accommodations now subject to the three per cent (3%) sales tax imposed by the State under G.S. 105-164.4(3); and (4) the gross receipts derived from services rendered by laundries, dry cleaners, cleaning plants and similar type businesses now subject to the three per cent (3%) sales tax imposed by the State under G.S. 105-164.4(4).

\*     \*     \*

". . . The county shall have no authority, with respect to the local sales and use tax, imposed under this division, to change, alter, add or delete any exemptions or exclusions contained under G.S. 105-164.13.

\*     \*     \*

". . . For the purpose of this division, it is immaterial that the sale of tangible personal property is consummated by delivery in another county or that tangible personal property leased or rented is or may be located in another county; provided, however, no tax shall be imposed where the tangible personal property sold is delivered by the re- tailer or his agent to the purchaser at a point outside this State or to a common carrier for delivery to the purchaser at a point outside this State.

\*     \*     \*

"It is the intention of this division that the provisions of this division and the provisions of the North Carolina Sales

and Use Tax Act, insofar as it is practicable, shall be harmonized. . . . The penalty provisions now applicable to the enforcement of the North Carolina Sales and Use Tax shall be applicable in like manner to the tax authorized to be levied and collected under this division."

The State Commissioner is charged with the responsibility of collecting the taxes, making certain deductions, and paying the balance to each taxing county, to be distributed between the county and its muncipalities, according to a formula based on the assessed valuation of property and of population.

"Sec. 2. The provisions of Section 1 of this Act *shall not be applicable* with respect to any building materials purchased for the purpose of fulfilling any lump sum or unit price contract entered into or awarded, or entered into or awarded pursuant to any bid made *before* the effective date of the tax imposed by a taxing county when, absent the provisions of this Section, such building materials would otherwise be subject to tax under the provisions of Section 1 of this Act."

In the event any county votes against the imposition of the tax, at any time thereafter on written request of the Board of Commissioners or upon a petition of 15% of the voters at the last election, the Board of Elections must call for another referendum on the question. There appears to be no limit to the number of elections that may be called in a county where the vote has been against the tax. On the contrary, no provision whatever is made for any referendum in any county which has voted for the tax.

The election called for was duly held at the time and in the manner prescribed by the General Assembly. When the results of the election were tabulated, 25 counties, including Buncombe, voted for the tax; 75 counties voted against it. The total vote in the State, according to the certificate of the Secretary of State, was: 181,786 for the tax; 349,318 against it.

Buncombe County and the City of Asheville, having been permitted to intervene as parties defendant, filed answers to the complaint denying that the sales and use tax paid by the plaintiff was unconstitutional, or was unlawfully exacted, and that summary judgment dismissing the action should be entered. The material facts, not being in dispute, all parties moved for summary judgment under 1A, Rule 56.

The court entered judgment against the plaintiff, dismissing its action. From the judgment, the plaintiff appealed.

*McGuire, Baley & Wood by J. M. Baley, Jr., Richard A. Wood, Jr., for the plaintiff.*

*Robert Morgan, Attorney General, Myron C. Banks, Assistant Attorney General, for the defendant Commissioner of Revenue.*

*W. M. Styles (County Attorney) for the defendant County of Buncombe.*

*James N. Golding (Corporation Counsel) for the defendant City of Asheville.*

HIGGINS, Justice.

[3] At the outset, a question arises whether the sales and use tax imposed under the authority of Chapter 1228 is a state or county levy. The question is one of law to be determined by the operative provisions of the Act. "A local tax is defined as 'one laid upon property in the locality, by the governing body thereof for an amount fixed by it, and for local governmental uses declared by it'. . . . A 'state tax' is one imposed by the state, but . . . is none the less a state tax because the legislature uses the municipal taxing machinery in the various political subdivisions of the state for its assessment and collection." Cooley, Taxation, Vol. 1, 4th Ed., Sec. 54, p. 145.

The defendants argue here that by Chapter 1228, the General Assembly extended to each of the counties the opportunity to vote on the proposed tax in the same manner as Chapter 1096 authorized Mecklenburg County to vote on the identical tax; that the tax is local—for the benefit of each county that approves it in the election. They further argue the Court should approve this tax as the Court approved the Mecklenburg tax in *Sykes v. Clayton*, 274 N.C. 398, 163 S.E. 2d 775. There seem to be differences which require careful analysis before accepting *Sykes* as authoritative in the instant case. The Mecklenburg act authorized a county election if called for by "written request" of the Mecklenburg Board of Commissioners or "on petition of fifteen per cent (15%) of the qualified voters." Decision whether there shall be an election is left entirely to the Mecklenburg authorities or the voters. The prospective taxpayers, therefore, have opportunity to appear before the Board of Commis-

sioners or among the voters and be heard as to whether the proposed tax is wise or otherwise, should or should not be levied. The Mecklenburg act provides: ". . . (S)aid county *may by special election adopt and levy* a one per cent (1%) sales and use tax." (Emphasis added.) There seems to be no doubt that when so adopted and levied, the tax is a county tax levied by the county under the permissive authority granted by the General Assembly.

A careful reading of the opinion of Justice Bobbitt upholding the tax *(Sykes v. Clayton, supra)* discloses this Court's grave concern whether the Mecklenburg tax could withstand a frontal assault on all constitutional grounds. "It is noted the plaintiff (Sykes) alleged generally that enforcement of the 1967 Act would violate his constitutional rights under Article I, Section 17 of the Constitution of North Carolina, and under the Fourteenth Amendment to the Constitution of the United States. However, his complaint does not set forth any specific contention with reference thereto. On appeal, 'no reason or argument is stated or authority cited' in his brief with reference to these constitutional provisions. Hence, whatever contention plaintiff may have had in mind is taken as abandoned."

Sykes argued only that his rights under *Sections 3 and 5, Article V,* were violated. The Court held Article V, Sections 3 and 5 inapplicable under the facts of the case. "On this appeal, in passing on the only question presented, we hold the 1967 Act is not void as violative of Sections 3 and 5 of Article V of our Constitution. Whether the 1967 Act, or any portion thereof, is vulnerable to attack as violative of other constitutional limitations is not presented." The Court was careful to say the decision in *Sykes* was limited to the holding that the taxpayer's constitutional rights under Article V, Sections 3 and 5 were not violated *for the reasons which he assigned.*

Specifically, the plaintiff (taxpayer) in the instant case charges that the tax which it was required to pay (and did pay under protest) deprived it of its property without due process of law, in violation of Article I, Section 17, State Constitution. It further contends the tax is unlawful, unconstitutional and discriminatory in that it was required to pay the tax, not only in its own county, but in every non-taxing county in which it did business, and that dealers in a non-taxing county were exempt from payment of the tax in all counties.

The Mecklenburg act *permitted* its governmental authorities to call for the election, and if approved, to levy the tax. Chapter 1228 *forces* every county to hold an election and to be eternally bound by the result if favorable to the tax, but subject to repeated elections if the vote was against the tax. Even that result is subject to the further exception that Edgecombe and Nash counties must vote as a unit, and both counties must approve the tax before it may be levied in either county. Neither county could decide the issue by voting for the tax if the other opposed.

The Mecklenburg act exempts a taxpayer in that county from the imposition of the tax if he delivers to the purchaser at a point outside Mecklenburg County. Chapter 1228 requires the taxpayer, in a taxing county, in all instances, to pay the tax, even though deliveries may be made to all points in the State. The above is subject to this exception: Section 2 of Chapter 1228 provided that a dealer in a taxing county is exempt from payment of the tax on building materials delivered to purchasers in non-taxing counties if (and only if) the contract of sale or a bid, which by acceptance became a contract, was executed prior to the effective date of the tax in his county. All other deliveries made after the effective date of the tax are taxable.

[3] Of course, before holding an act of the co-ordinating branch of the government unconstitutional, the unconstitutionality must clearly appear. Unless it does so appear, the act should not be invalidated as unconstitutional. With this in view, we have searched for some valid way to sustain the constitutionality of Chapter 1228, Session Laws of 1969. We are forced to conclude the Act is not one merely permitting counties, at their election, to determine whether the tax should be imposed. The Act compels each county to take its stand at a compulsory election. This provision denies to the proposed taxpayer the right to be heard by his Board of Commissioners on the question whether local conditions require the imposition of the tax, or whether other means of taxation available to the county would be more equitable, even if the necessity for additional revenue is made to appear. The conclusion seems inescapable that the State of North Carolina (not the several counties) has set up the taxing scheme. Nothing is left to the discretion of the county but to apportion the tax money received from the State Commissioner of Revenue, and to apportion it between the county and its municipalities according to the formula fixed in the Act.

Hajoca Corp. v. Clayton, Comr. of Revenue

At the time of its passage, the General Assembly had misgivings about the constitutionality of the Act, and provided by Section 3:

"If any provisions of this Act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application. . . ."

[1] The Constitution does not permit a state to levy a tax which discriminates in favor of or against taxpayers in the same classification. The prohibition extends throughout the State. Hence, the State cannot levy a tax in 25 counties and exempt 75 counties. Nor can the State set up a valid scheme by which that precise result is accomplished. The State cannot tax a dealer in Buncombe County and exempt his counterpart on the other side of an imaginary line which separates Buncombe from McDowell.

The authorities controlling on the question whether the challenged Act is constitutional are here cited:

"It has been declared by this Court that the power to classify subjects of taxation carries with it the discretion to select them, and that a wide latitude is accorded taxing authorities, particularly in respect of occupation taxes, under the power conferred by Art. V, Sec. 3 of the Constitution." *Bottling Co. v. Shaw*, 232 N.C. 307, 59 S.E. 2d 819.

"Literally the requirement of uniformity is confined to taxes on property, but repeated judicial interpretations extend this requirement to license, franchise, and other forms of taxation.

\*      \*      \*

" . . . (T)he language used restricts uniformity to taxes on property, but an unbroken line of decisions has construed the rule of uniformity required by the Constitution to apply equally to the taxes authorized by the last quoted sentence." (Citing *Kenny Co. v. Brevard*, 217 N.C. 269, 7 S.E. 2d 542; and many cases cited therein.) *Assurance Co. v. Gold*, 249 N.C. 461, 106 S.E. 2d 875.

"All taxes on property in this State for the purpose of raising revenue are imposed under the rule of uniformity. In express terms the Constitution requires that laws shall

be passed taxing real and personal property . . . by a uniform rule. Article V, Section 3. The same section provides that the General Assembly may tax trades and professions and while this clause does not expressly apply the rule of uniformity to taxes imposed on trades and professions it has been judicially determined that the rule applies to these taxes as well as to taxes on property." (Citing numerous cases) *Roach v. Durham,* 204 N.C. 587, 169 S.E. 149.

"Equality within the class or for those of like station and condition is all that is required to meet the test of constitutionality. . . . 'A tax on trades, etc., must be considered uniform when it is equal upon all persons belonging to the prescribed class upon which it is imposed.' " *Leonard v. Maxwell,* 216 N.C. 89, 3 S.E. 2d 316.

". . . License taxes must bear equally and uniformly upon all persons engaged in the same class of business or occupation or exercising the same privileges." *Kenny Co. v. Brevard, supra.*

"It may also be noted that the requirements of 'uniformity,' 'equal protection,' and 'due process,' are, for all practical purposes, the same under both the State and Federal Constitutions." *Leonard v. Maxwell, supra.*

"The Constitution (Art. V, sec. 3) says that the Legislature shall tax by a uniform rule all moneys, etc., and all property according to its value in money, and that it may also tax trades, etc. Although it is not expressly provided that the tax on trades, etc., shall be uniform, yet a tax not uniform, as properly understood, would be so inconsistent with natural justice, and with the intent which is apparent in the section of the Constitution above cited, that it may be admitted that the collection of such a tax would be restricted as unconstitutional." *Gatlin v. Tarboro,* 78 N.C. 119.

"Uniformity, in its legal and proper sense, is inseparably incident to the exercise of the power of taxation, but is it absent from the impeached ordinance? It is defined by Mr. Justice Miller, in the *Railroad Tax Cases,* 92 U.S., 575, and the definition accepted as correct by this Court in *Puitt v. Comrs.,* 94 N.C. 709, to consist in putting the same tax upon all of the same class—that is, while the same tax must be enforced upon all innkeepers, upon railroads, and so throughout, a tax discriminating persons of the same class,

whereby some are required to pay more than others, would lack uniformity." *State v. Powell*, 100 N.C. 525, 6 S.E. 424.

"With reference to locality a tax is uniform when it operates with equal force and effect in every place where the subject of it is found . . . and with reference to classification, it is uniform when it operates without distinction or discrimination upon all persons composing the described class." *Railroad v. Lacy*, 187 N.C. 615, 122 S.E. 763.

"Uniformity of taxation, as provided for by state constitution, is required throughout the territorial limits of the taxing district . . . ." Cooley on Taxation, 4th Ed., p. 645.

"Taxing is required to be by a uniform rule—that is, by one and the same unvarying standard . . . . Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of assessment, as well as in the rate of taxation. But this is not all. The uniformity must be co-extensive with the territory to which it applies. If a State tax, it must be uniform all over the State. If a county or city tax, it must be uniform throughout the extent of the territory to which it is applicable. . . ." Burroughs on Taxation, Section 51, p. 62.

"The principles of equality and uniformity are indispensable to taxation, whether general or local. Local taxation must be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and must be assessed upon all the property according to its just valuation." Desty on Taxation, Vol. 2, p. 1119.

[2]   A sovereign state, as one of its inherent attributes, has the power of taxation, which must be exercised by its legislative branch. The county is not a sovereign and hence does not have the inherent power to levy taxes. A county must derive its taxing power from the State Constitution or from the State's legislative enactments. Article VII of the State Constitution, by Section 1, provides for the election of county commissioners. Section 2 gives the commissioners power to levy taxes. Commissioners must act as a board and by resolution. The County Board of Elections does not have taxing power.

The taxes involved in this action were levied by the General Assembly. The Board of County Commissioners did not take part or perform any function whatever in the levying or the collec-

tion of the taxes. Neither the County Treasurer nor the County Tax Collector participated in any part of the taxing procedure. All functions incident to the collection of the tax are given to the State Commissioner of Revenue. The Act says ". . . (T)he Commissioner of Revenue shall proceed as authorized in this division to administer the tax in such county (certified as having voted for the tax); provided, however" (here follows the special arrangement that both Edgecombe and Nash Counties must vote for the tax before it is made applicable to either county). The Commissioner of Revenue is given the power to make all rules and regulations incident to the collection and distribution of the tax including the duty of determining population ratios between counties and their municipalities upon the basis of which the tax money is apportioned. He must see to it that the provisions of the act and the provisions of the North Carolina Sales and Use Tax Act, insofar as is practicable, shall be harmonized. The only authority whatever given to the Board of County Commissioners is the discretionary right to call on the County Board of Elections for another referendum if a county has voted against the tax.

[3] When the provisions of Chapter 1228 are analyzed impartially, the conclusion seems inescapable that the State of North Carolina and not Buncombe County levied the sales and use tax involved in this action. The levy is discriminatory in that it requires the plaintiff to pay the tax involved and it exempts his competitor in a county which votes against the tax. Both Nash and Edgecombe are exempt if either votes against the tax. Uniformity is required. No provision is made for partial uniformity.

Chapter 1228 forces a state-wide referendum to be held on November 4, 1969, at which electors may vote *for or against the tax.* If a majority votes for the tax, collection by the State Commissioner must begin in 90 days and continue until the taxing act is repealed. If the vote is against the tax, another referendum may be called for as often as the Board of Commissioners or 15% of the voters petition for it, or until the county votes for the tax. The foregoing is subject to the exception applicable to Edgecombe and Nash counties. That exception, of course, destroys territorial uniformity. The provision that a dealer in a taxing county must pay taxes on sales and deliveries made in a non-taxing county, as well as his own, and his competitor in

a non-taxing county pays in neither, destroys uniformity of application.

The taxing scheme set up by Chapter 1228, viewed in its nakedness, required a state-wide tax referendum, in which the tax plan was overwhelmingly defeated. We hold the tax which the plaintiff was required to pay was illegally and unconstitutionally exacted, for the reasons herein discussed, and should be refunded.

The judgment of the Superior Court of Buncombe County, for the reasons herein assigned, is

Reversed.

Chief Justice BOBBITT dissenting:

I dissent from the view that the additional one per cent sales and use tax authorized by Chapter 1228, Session Laws of 1969, is "a State tax." The State does not impose the tax. Nor does the State receive for its use any of the revenues therefrom.

The Act required that the initial election be held on the same date in every county of the State. In this manner, the identity of the counties which wished to avail themselves of the provisions of the Act was determined. The Act authorized the voters in each county to determine whether their county would impose the tax. When the tax was imposed by a majority of the voters of a county, the provisions of the Act became operative in that county in respect of (1) the transactions to which the tax applies, (2) the collection of the taxes, and (3) the distribution of the revenues therefrom.

Since the Act *enables* the voters of *every* county to determine whether the tax is to be imposed by that county, it is not a local act in contravention of Article II, Section 29, of the Constitution of North Carolina. *Whitney Stores v. Clark*, 277 N.C. 322, 177 S.E. 2d 418, and cases cited. The special provision relating to Nash and Edgecombe Counties simply recognizes that the Nash-Edgecombe line divides the City of Rocky Mount and the absurdity of having a sales and use tax apply to one portion of the city but not to the other. In my opinion, this special provision appropriate to a unique situation affords no substantial basis for holding the Act is a local act rather than a general law.

The tax, when imposed in a particular county by the majority of the voters thereof, is not a tax on real and personal

property, tangible or intangible, according to the value thereof, and therefore is not void as violative of Article V, Sections 3 and 5, of the Constitution of North Carolina. *Sykes v. Clayton, Comr. of Revenue,* 274 N.C. 398, 163 S.E. 2d 775, and cases cited.

The Act contains this provision: "(I)t is immaterial that the sale of tangible personal property is consummated by delivery in another county or that tangible personal property leased or rented is or may be located in another county . . . ." In contrast, as noted in the majority opinion, the statute applicable to Mecklenburg County considered in *Sykes v. Clayton, Comr. of Revenue, supra,* contains the following provision: "No tax shall be imposed where the tangible personal property is delivered to the purchaser at a point outside this State or Mecklenburg County."

A sales tax is an excise or license tax. *Sykes v. Clayton, Comr. of Revenue, supra* at 404, 163 S.E. 2d at 779-780. A sale, if taxable at all, is taxable where the sale is made. The General Assembly may not constitutionally confer authority upon the voters of one county to impose and collect sales and use taxes except on transactions within the taxing county. Thus, in my opinion, the provision(s) of the Act which purports to authorize a taxing county, *e.g.,* Buncombe County, to impose a tax on a sale made in Rutherford County, *i.e.,* a nontaxing county, because the merchandise is delivered from the seller's place of business in Buncombe to the purchaser in Rutherford, is invalid and unenforceable.

"Legislative power vests exclusively in the General Assembly, Constitution of North Carolina, Article II, and, except as authorized by the Constitution, as in case of municipal corporations, may not be delegated. *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310. While an act, otherwise valid, may be enacted so as to take effect upon approval by a majority of the qualified voters of the affected locality, *Cottrell v. Town of Lenoir,* 173 N.C. 138, 91 S.E. 827, 16 C.J.S., Constitutional Law, Section 142, and 11 Am. Jur., Constitutional Law, Section 216, the General Assembly cannot constitutionally provide that the qualified voters in one governmental unit, *e.g.,* a town, shall decide whether a statute shall be in force and effect elsewhere than in the territory comprising that particular governmental unit. *Levering v. Board of Supervisors of Elec-*

*tions of Baltimore City,* 137 Md. 281, 112 A. 301." *Taylor v. Racing Asso.,* 241 N.C. 80, 95, 84 S.E. 2d 390, 401.

The Act, as is customary in an extended legislative enactment, contains a separability clause. My vote is to hold invalid only that provision of the Act which purports to tax transactions outside the jurisdictional limits of the taxing county. With this exception, I would uphold the validity of the Act as against the other grounds on which plaintiffs attack it.

Accordingly, upon the facts of the present case, I would hold that plaintiff is entitled to recover the amount collected as taxes on sales made by plaintiff outside Buncombe County ($436.41) but not the amount collected as taxes on sales made by plaintiff within Buncombe County ($733.73).

Justices SHARP and MOORE join in this dissenting opinion.