FULTON CORPORATION v. BETSY Y. JUSTUS, SECRETARY OF REVENUE

No. 305A93

(Filed 9 December 1994)

### Taxation § 92 (NCI4th)— intangibles tax on corporate stock— no violation of Commerce Clause

The North Carolina intangibles tax levied on corporate stock pursuant to N.C.G.S. § 105-203 does not violate the Commerce Clause of the U.S. Constitution because the statute taxes more heavily stock of corporations doing business outside North Carolina since the amount of the intangibles tax is directly and inversely proportional to the income of the issuing corporation which is taxed in North Carolina; the effect is to reduce the intangibles tax liability for stock held in a corporation to the extent the corporation's income is taxed in this state and to increase the intangibles tax liability on stock held in a corporation to the extent the corporation's income is not taxed in North Carolina; a reduction in the intangibles tax to the shareholder is thus offset in a direct proportional way by an income tax to the corporation; and this "compensating tax" scheme provides for substantial equality which satisfies the Commerce Clause.

**Am Jur 2d, State and Local Taxation §§ 170 et seq., 244 et seq.**

Appeal by plaintiff and defendant as of right pursuant to N.C.G.S. § 7A-30(1) from a unanimous decision by the Court of Appeals, 110 N.C. App. 493, 430 S.E.2d 494 (1993), reversing summary judgment for defendant, entered by Brooks, J., on 8 November 1991 in Superior Court, Wake County. This Court also allowed plaintiff's petition for discretionary review of additional issues pursuant to N.C.G.S. § 7A-31.[1] Heard in the Supreme Court 2 February 1994.

*Womble Carlyle Sandridge & Rice, by Jasper L. Cummings, Jr., for plaintiff-appellant and -appellee.*

*Michael F. Easley, Attorney General, by Marilyn R. Mudge, Assistant Attorney General, for defendant-appellant and -appellee.*

---

1. Because of our resolution of the Commerce Clause issue against plaintiff's position, the additional issues raised in plaintiff's petition need not be addressed.

**FULTON CORP. v. JUSTUS**

[338 N.C. 472 (1994)]

EXUM, Chief Justice.

Plaintiff, Fulton Corporation, is a North Carolina corporation with its principle place of business in North Carolina. Plaintiff owns stock in other corporations and pays an "intangibles" tax on that stock to this State pursuant to N.C.G.S. § 105-203. On 1 May 1991 plaintiff filed suit challenging the constitutionality of North Carolina's intangibles tax levied on ownership of corporate stock. Plaintiff alleged that the provisions of North Carolina's general statutes controlling the taxation of stock, particularly N.C.G.S. § 105-203, violate the Commerce Clause of the United States Constitution because the statute taxes more heavily stock of corporations not doing business in North Carolina. Plaintiff also alleged that the taxing scheme violates plaintiff's due process and equal protection rights under the North Carolina and United States Constitutions. Plaintiff requested that N.C.G.S. § 105-203 be declared null and void and that defendant be ordered to pay plaintiff a refund for the intangibles taxes paid by plaintiff for the 1990 tax year. Plaintiff and defendant both filed motions for summary judgment. The Superior Court allowed defendant's motion and denied plaintiff's motion on 15 November 1991.

Plaintiff appealed to the Court of Appeals. The Court of Appeals reversed the superior court's ruling, holding the intangibles tax at issue violative of the Commerce Clause. The Court of Appeals, however, found that the unconstitutional provisions of the taxing scheme are severable and struck the portion of N.C.G.S. § 105-203 which reduces intangibles tax based on the extent of business done in North Carolina by the issuing corporation. Thus, the intangibles tax on plaintiff's stock remained and plaintiff was denied a refund. Plaintiff appealed the decision of the Court of Appeals, arguing that the Court of Appeals correctly determined that the taxing scheme was unconstitutional, but that it erred in excising the deduction in N.C.G.S. § 105-203 rather than making the deduction applicable to the stock of all corporations. Defendant also appealed from the Court of Appeals' decision, arguing that N.C.G.S. § 105-203 does not violate the Commerce Clause.

We begin with an overview of North Carolina's intangibles tax on corporate stock and other related tax statutes.[2] Pursuant to N.C.G.S.

---

2. Several sections in Chapter 105 were amended in the 1991 and 1992 sessions of the General Assembly. None of the amendments affect the resolution of the issues presented in this case. All references are to the most recent version of the statutes.

FULTON CORP. v. JUSTUS

[338 N.C. 472 (1994)]

§§ 105-130 to 105-130.41, North Carolina imposes an income tax of 7.75%[3] on the net income of corporations doing business in North Carolina. N.C.G.S. § 105-130.3 (1992). If a corporation does business in North Carolina and other states, then only that percentage of its business income which is apportionable to North Carolina is taxable here. N.C.G.S. § 105-130.4(b) (1992). A corporation's business income is apportioned on the basis of three factors: (1) the value of the corporation's property owned, rented or used in North Carolina during the income year divided by the value of all the corporation's property owned, rented or used during the income year; (2) the total amount paid by the corporation in North Carolina during the income year as payroll divided by the total amount paid by the corporation everywhere during the income year; and (3) the corporation's total sales in North Carolina divided by the corporation's total sales everywhere during the income year. N.C.G.S. § 105-130.4(j)(1), (k)(1), (l)(1) (1992). The first factor, sales, is double-weighted in the apportionment formula. N.C.G.S. § 105-130.4(i) (1992). A multi-state corporation's nonbusiness income, such as rents, royalties, and dividends are taxed depending on whether and to what extent the income has some connection to the state. N.C.G.S. § 105-130.4(c) (1992). For example, if the property from which rents and royalties are gained is located in North Carolina, then that nonbusiness income is taxable in North Carolina. N.C.G.S. § 105-130.4(d)(1) (1992).

A corporation, such as plaintiff here, whose commercial domicile is in North Carolina must pay income tax on dividends received on stock which it owns. N.C.G.S. § 105-130.4(f) (1992). N.C.G.S. § 105-130.7(1) provides for a deduction in the dividends on which the corporation pays tax; it states:

> [T]he Secretary of Revenue shall determine from the corporate income tax return filed during the year ending September 30 by each corporation required to file a return during that period the proportion of the entire net income or loss of the corporation allocable to this State under the provisions of G.S. 105-130.4, except as provided herein. . . . A corporation which is a stockholder in any such corporation shall be allowed to deduct the same proportion of the dividends received by it from such corporation during its income year ending on or after September 30.

The amount of deductible dividends is capped at $15,000. N.C.G.S. § 105-130.8(6). Thus, the amount of dividends a corporate sharehold-

---

3. Prior to 1991 the tax rate was 7%.

er may deduct is based on the percentage of the issuing corporation's net income that is allocable to and taxable in this state. The greater percentage of corporate income allocated to and taxed in this State, the more dividend income the shareholder is allowed to deduct.

N.C.G.S. § 105-203 sets forth the intangible property tax to be levied against North Carolina residents for stock owned. It states:

> All shares of stock. . . . owned by residents of this State . . . shall be subject to an annual tax, which is hereby levied, of twenty-five cents (25¢) on every one hundred dollars ($100.00) of the total fair market value of the stock on December 31 of each year less the proportion of the value that is equal to:
>
> (1)  In the case of a taxpayer that is a corporation, the proportion of the dividends upon the stock deductible by the taxpayer in computing its income tax liability under G.S. 105-130.7 without regard to the fifteen thousand dollar ($15,000) limitation under G.S. 105-130.7 . . . .

Thus the intangibles tax on stock is computed in the following manner: the greater the percentage of the issuing corporation's total income which is allocated to and taxed in this state the more dividend income from that corporation a corporate shareholder is allowed to deduct and the less intangibles tax the shareholder pays. The amount by which the intangibles tax against the shareholder is reduced, therefore, is directly related to the amount of the issuing corporation's income which is allocated to and taxed in this state. If 70% of the issuing corporation's income is allocated to North Carolina, then 70% of the dividends on that corporation's stock are deductible by the corporate shareholder as income, the stock's value for intangibles tax purposes is reduced by 70%, and the intangibles tax thereby decreased by 70%.

We now turn to the issue before us, which is whether North Carolina's intangibles tax on stock violates the Commerce Clause.

The United States Constitution grants Congress the authority to "regulate Commerce . . . among the several states." U.S. Const. art. II, § 8, cl. 3. It is well established that "[t]he Commerce Clause was not merely an authorization to Congress to enact laws for the protection and encouragement of commerce among the States, but by its own force created an area of trade free from interference by the States." *Freeman v. Hewit*, 329 U.S. 249, 252, 91 L. Ed. 265, 271 (1946), *reh'g denied*, 329 U.S. 832, 91 L. Ed. 705 (1947). Pursuant to the Commerce

FULTON CORP. v. JUSTUS

[338 N.C. 472 (1994)]

Clause no state may "impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local businesses." *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 3 L. Ed. 2d 421, 427 (1959). It is the Court's " 'duty to determine whether the statute under attack, whatever its name may be, will, in its practical operation work discrimination against interstate commerce.' " *Maryland v. Louisiana*, 451 U.S. 725, 756, 68 L. Ed. 2d 576, 601 (1981) (quoting *Best & Co. v. Maxwell*, 311 U.S. 454, 455-56, 85 L. Ed. 275, 277 (1940)).

Even a discriminatory tax, however, will be upheld where it is "designed simply to make interstate commerce bear a burden already borne by intrastate commerce." *Associated Indus. of Missouri v. Lohman*, 511 U.S. __, __, 128 L. Ed. 2d 639, 647 (1994). "Under that doctrine, a facially discriminatory tax that imposes on interstate commerce the rough equivalent of an identifiable and 'substantially similar' tax on intrastate commerce does not offend the . . . Commerce Clause." *Oregon Waste Sys., Inc. v. Department of Environmental Quality*, 511 U.S. __, __, 128 L. Ed. 2d 13, 23 (1994). "The common thread running through the cases upholding compensatory taxes is the equality of treatment between local and interstate commerce." *Maryland v. Louisiana*, 451 U.S. at 759, 68 L. Ed. 2d at 603.

Plaintiff argues that the intangibles tax on stock is facially discriminatory against corporations doing business outside North Carolina. Plaintiff asserts that due to the greater taxation of stock of corporations doing business outside North Carolina, those corporations will have more difficulty raising capital through the sale of stock in North Carolina than will corporations doing business in North Carolina only. Plaintiff also asserts that the current tax scheme encourages corporations to conduct business in North Carolina since that will reduce the intangibles tax liability to its North Carolina shareholders thereby enhancing the marketability of its shares in North Carolina.

Defendant argues that there is no evidence in the record showing that the tax scheme will actually affect interstate commerce. Defendant also argues that this case is controlled by *Darnell v. Indiana*, 226 U.S. 390, 57 L. Ed. 267 (1912), and that any discrimination in the tax scheme can be justified as a compensatory tax.

After carefully reviewing the Supreme Court's jurisprudence in this area of law, which the Court itself has characterized as a "quagmire," *American Trucking Ass'n v. Scheiner*, 483 U.S. 266, 280, 97

## FULTON CORP. v. JUSTUS

[338 N.C. 472 (1994)]

L. Ed. 2d 226, 241 (1987), we conclude that the tax in question is permissible based on the Court's holding in *Darnell.*

In *Darnell* the plaintiff, a resident of Indiana, owned stock in a Tennessee corporation which paid no property taxes in Indiana. Indiana taxed all shares in foreign corporations owned by inhabitants of the state, and "all shares in domestic corporations when the property of the corporations . . . is not taxable to the corporation itself. If the value of the stock exceeds that of the tangible taxable property that excess also is taxed." *Darnell* at 397, 57 L. Ed. at 272. The plaintiff challenged the Indiana intangibles tax on the ground that it violated the Commerce Clause and the Fourteenth Amendment. The Court upheld the tax in an opinion by Justice Holmes, who reasoned:

> The only difference of treatment disclosed by the record that concerns the defendants, is that the State taxes the property of domestic corporations and the stock of foreign ones in similar cases. That this is consistent with substantial equality notwithstanding the technical differences was decided in *Kidd v. Alabama,* 188 U.S. 730, 732, 47 L. ed. 669, 672, 23 Sup. Ct Rep. 401.[4]

---

4. In *Kidd v. Alabama,* 188 U.S. 730, 47 L. Ed. 669 (1903), an Alabama tax on the stock of foreign railroads was challenged because there was no corresponding tax on the stock of domestic railroads. The Court upheld the tax against a challenge that the tax violated the Fourteenth Amendment, stating:

> We see nothing to prevent a state from taxing stock in some domestic corporations and leaving stock in others untaxed on the ground that it taxes the property and franchises of the latter to an amount that imposes indirectly a proportional burden on the stock. When we come to corporations formed and having their property and business elsewhere, the state must tax the stock held within the state if it is to tax anything and we are now assuming the right to tax stock in foreign corporations to be conceded. If it does tax that stock, it may take into account that the property and franchise of the corporation are untaxed on the same ground that it might do the same thing with a domestic corporation. There is no rule that the state cannot look behind the present net value of different stocks.

The Court reasoned similarly in *Klein v. Board of Tax Supervisors of Jefferson County, Ky.*, 282 U.S. 19, 75 L. Ed. 140 (1930). In Klein the plaintiff raised a Fourteenth Amendment challenge to a Kentucky tax on stock which exempted stock in corporations which had 75% of their total property in Kentucky and paid Kentucky property taxes on that property. The Court affirmed the tax, stating:

> If the corporation having all its property in the state had paid taxes upon the whole, usually it would be just not to tax the stockholder in respect of values derived from what has already borne its share.

*Id.* at 23, 75 L. Ed. at 142-43.

FULTON CORP. v. JUSTUS

[338 N.C. 472 (1994)]

We find our case controlled by *Darnell*. In *Darnell* the Supreme Court found substantial equality, sufficient to satisfy the Commerce Clause, in taxing the stock of foreign corporations not paying property taxes and taxing the property of domestic corporations.[5] In the instant case the state imposes an intangibles tax on the shares of stock of corporations the amount of which is directly and inversely proportional to the income of the issuing corporation which is taxed in North Carolina. The effect is to reduce the intangibles tax liability for stock held in a corporation to the extent the corporation's income is taxed in this state and to increase the intangibles tax liability on stock held in a corporation to the extent the corporation's income is not taxed in North Carolina. This is the very kind of "compensating" tax scheme the Supreme Court upheld in *Darnell*.

Plaintiff attempts to distinguish *Darnell* on the ground that "[u]nlike the instant case *Darnell* dealt with a property tax on the shareholder that was directly offset by a property tax on the corporation." We agree with plaintiff that the instant case does not involve an intangibles tax to the shareholder which is offset by a *property* tax to the corporation, but we find that difference immaterial. This case involves a reduction in the intangibles tax to the shareholder which is offset in a direct proportional way by an *income* tax to the corporation.

Where a corporation does business inside and outside North Carolina, it pays income tax to North Carolina on only that portion of its income allocable to North Carolina under N.C.G.S. § 105-130.4. A corporation doing business solely in North Carolina pays an income tax on all of its income. The North Carolina income tax paid by a corporation doing business solely in North Carolina will therefore be greater than the North Carolina income tax of a similar corporation doing some business outside North Carolina. This excess income tax

_____

While *Kidd* and *Klein* involved challenges to taxes based upon the Fourteenth Amendment, which makes those cases distinguishable from the challenge before us based on the Commerce Clause, they are nevertheless persuasive authority for the proposition that a state may tax the shares of certain corporations, such as a corporation doing business outside North Carolina, and with respect to other corporations, such as corporations operating exclusively in the state, tax the corporation itself, whether it be a property tax or an income tax.

5. The Indiana statute actually taxed all foreign corporations regardless of whether they actually paid property taxes in Indiana. The plaintiffs in *Darnell*, however, did not establish that their corporations paid Indiana property taxes and the Supreme Court limited its holding to situations where the corporation in question paid no property tax in Indiana. *Darnell*, 226 U.S. at 398, 57 L. Ed. at 272.

paid by the North Carolina corporation offsets, or balances, the intangible property tax on stock of the corporation doing some business outside North Carolina in the same manner that the property tax paid by domestic corporations in *Darnell* offset the intangible property tax on shares of stock of foreign corporations which did not pay property taxes in Indiana.

Plaintiff further attempts to distinguish *Darnell* on the ground that while there might be a relationship between the value of a corporation's stock and the value of its property, the "relationship between the stock-issuing corporation's North Carolina income tax and the shareholders' North Carolina intangible property tax" is "vague." We disagree.

Corporate income tax, which is directly proportional to corporate income, affects the amount of corporate income available for distribution as dividends to shareholders, and dividends paid are a major component of the valuation of the corporation's stock. Hence, we think it a sound generalization that corporate income, and income tax paid, are strongly related to the value of the corporation's stock. The strength of this relationship is aptly demonstrated by the fact that economists and investors frequently make use of the "price-earnings" ratio, or P/E ratio, which essentially represents the relationship of the value of a corporation's stock to its earnings. *See, e.g.*, 3 The New Palgrave Dictionary of Money & Finance 176 (1992).[6]

Plaintiff also asserts that even if a corporation's income bears a relationship to the value of its stock, taxation of corporate income and taxation of corporate shares do not necessarily result in equal treatment. Plaintiff provides the following hypothetical situation:

> Corp. X, operating solely in North Carolina, earns $100 income from unproductive real estate worth $1 million. It pays about $7 North Carolina income tax and its shareholders pay zero intangible tax. Corp. Y, an identical corporation operating solely in Virginia, pays no North Carolina income tax and its shareholders pay $2,500 intangible tax on $1 million in stock value.

We agree that in this hypothetical situation the intangibles tax on shares of a foreign corporation greatly exceeds the income tax to a similar corporation operating solely in North Carolina. Only in excep-

---

6. The P/E ratio usually refers to price per share relative to earnings per share, but that ratio is the same as the value of all corporate stock, which is price per share times number of shares outstanding, to the corporations' earnings, which is earnings per share times number of shares outstanding.

FULTON CORP. v. JUSTUS

[338 N.C. 472 (1994)]

tional and extreme cases, such as the one suggested by plaintiff, would North Carolina's tax against shares of corporations doing business in other states exceed the tax against the income of similar corporations doing business in North Carolina.

North Carolina taxes corporate income at 7.75 percent and taxes ownership of stock at .25 percent of the taxable value of the stock. Given these tax rates, a North Carolina corporation need only have a P/E ratio less than 31 (7.75/.25) in order to have the tax against its income exceed the intangibles tax against the stockholders of a comparable corporation doing business only in Virginia and having all its shareholders in North Carolina.[7] Since P/E ratios are only rarely greater than 31,[8] most out-of-state corporations will in fact be paying less taxes to North Carolina, directly in the form of an income tax and indirectly in the form of an intangibles tax against shares, than a similar North Carolina corporation. The result reached in plaintiff's hypothetical situation above seems to unfairly tax out-of-state corporations, but that hypothetical involves the unrealistic situation of a corporation with a P/E ratio of 10,000. The absurdity of plaintiff's hypothetical demonstrates that under ordinary circumstances there will be no greater taxation of out-of-state corporations and their shareholders than there will be of in-state corporations and their shareholders.

While there are some differences between the tax at issue here and the one in *Darnell*, we find these differences not material and we believe that North Carolina's intangibles tax on corporate stock, when considered with its corporate income tax, provides for "substantial equality" as was found in *Darnell*.

We also feel it necessary briefly to address the continued validity of *Darnell*. While plaintiff's principle argument regarding *Darnell* is that it is distinguishable, which we have rejected, it also argues to a lesser degree that *Darnell* has been implicitly overruled or modified by more recent cases. The principal modern cases discussing the compensating tax and cited by plaintiff are *Armco v. Hardesty*, 467

---

7. With a P/E ratio of 31, stock valued at $3100 earns $100 of income to the corporation. If the corporation conducted no business in North Carolina, the intangibles tax against the shareholders would be .0025 x $3100, or $7.75; if the corporation conducted all its business in North Carolina, the income tax against the corporation would be .0775 x $100, or $7.75.

8. *See, e.g.*, 3 The New Palgrave Dictionary of Money & Finance at 177 (showing Standard & Poor's Composite Index for P/E ratio from 1926 to 1991; P/E ratio mainly between 10 and 20, never greater than 25).

U.S. 638, 81 L. Ed. 2d 540, *reh'g denied*, 467 U.S. 638, 81 L. Ed. 2d 540 (1984) and *Maryland v. Louisiana*, 451 U.S. 725, 68 L. Ed. 2d 576 (1981).

In *Armco* West Virginia imposed a gross receipts tax on wholesale sales of tangible property; local manufacturers, however, were exempt from this tax. 467 U.S. at 640, 81 L. Ed. 2d at 5-6. The plaintiff, an Ohio corporation selling steel products wholesale in West Virginia, challenged the wholesale tax. *Id.* The Court first determined that the tax was facially discriminatory against interstate commerce and then proceeded to examine whether the tax could be saved as a compensating tax. 467 U.S. at 642, 81 L. Ed. 2d at 545. West Virginia argued that the wholesale tax exempting local manufacturers was designed to offset a sales tax imposed against local manufacturers only. The Court rejected that argument, reasoning that manufacturing and wholesaling are not "substantially equivalent events" and that certain aspects of the West Virginia sales tax on manufacturers indicated that the tax was aimed at manufacturing and not wholesaling.[9] *Id.* at 643, 81 L. Ed. 2d at 545-46.

In *Maryland v. Louisiana* the Court faced a Louisiana tax on the "first use" of gas; the tax, however, did not apply to gas extracted from Louisiana, which was subject to a "severance tax" equal to the first use tax, and did not apply to gas sold in Louisiana for certain purposes. 451 U.S. at 731, 68 L. Ed. 2d at 586. The Court first determined that the tax "discriminate[d] against interstate commerce in favor of local interests." *Id.* at 756, 68 L. Ed. 2d at 602. The Court then dealt with Louisiana's argument that the first use tax was equalized by the severance tax which affected only local producers of gas. The Court rejected the argument, finding that the rationale behind the severance tax, which is a tax on the privilege of severing resources from the soil, does not exist with respect to gas not extracted from Louisiana. *Id.* at 759, 68 L. Ed. 2d at 603.

After reviewing these cases, we believe we should not conclude that *Darnell* has been implicitly overruled. First, we generally are loath to conclude that a Supreme Court decision has been implicitly overruled, especially when the Court has emphasized that issues

---

9. The aspects of the West Virginia taxing scheme the Court looked to were that West Virginia did not reduce the manufacturing tax when the goods were sold outside West Virginia and that the manufacturing tax was decreased when part of the manufacturing occurred outside the state. *Armco*, 467 U.S. at 643, 81 L. Ed. 2d 546.

involved here must be decided on a case-by-case basis. *See Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 329, 50 L. Ed. 2d 514, 524 (1977) (whether law violates Commerce Clause "turns on the unique characteristics of the statute at issue and the particular circumstances in each case"). The Supreme Court of Indiana unanimously reached the same conclusion in *Indiana Department of State Revenue v. Felix*, 571 N.E.2d 287, 292 (1991), *cert. dismissed*, —— U.S. ——, 117 L. Ed. 2d 278 (1992) (after thorough analysis, court could not "conclude that *Darnell* has been implicitly overruled by the United States Supreme Court").

We are also reluctant to conclude *that Darnell* has been overruled by *Armco* and *Maryland v. Louisiana* because the taxes at issue in those cases are readily distinguishable. *Armco* and *Maryland v. Louisiana* dealt with taxes on the interstate exchange of goods, namely steel products and gas; this case, however, concerns a tax which allegedly discriminates against the interstate ownership of corporate shares. Since a corporation's continued existence and success depend most heavily on its ability to market its goods, a discriminatory tax levied upon a corporation's trade may well come under closer Commerce Clause scrutiny than a tax on the stock it issues. The latter has no effect on the corporation's trade and, we think, a negligible effect on a multi-state corporation's ability to raise capital.

Thus, as this case is controlled by *Darnell*, which has not been overruled, we rule in favor of defendant and conclude that the tax is valid. Finding the tax valid, we do not reach plaintiff's questions regarding a refund and attorney's fees.

Plaintiff also argues in its brief that the tax is unconstitutional under other provisions of the state and federal constitutions. No reference was made to bringing this argument before the Supreme Court in plaintiff's notice of .appeal, petition for discretionary review or response to defendant's notice of appeal. Plaintiff has not discussed those arguments in its new brief filed with us. Therefore, we conclude that this issue is not properly before this Court. N.C.R. App. P. 16(a) & 28(a).

The decision of the Court of Appeals is, therefore, reversed and the judgment of the Superior Court reinstated.

REVERSED AND REMANDED.