DONALD L. SMITH, HAROLD D. COLEY, JR., D. REID COTTRELL, AND E. MICHAEL LATTA, AND ALL OTHERS SIMILARLY SITUATED v. STATE OF NORTH CAROLINA, AND MURIEL K. OFFERMAN, SECRETARY OF REVENUE

No. 61A98

(Filed 4 December 1998)

### Taxation § 92 (NCI4th)— intangibles tax—unconstitutional—refund—requirement of protest

The trial court erred by dismissing the claims of plaintiffs who paid an intangibles tax without giving notice of a challenge to the legality of the tax where the General Assembly subsequently determined to refund the tax only to taxpayers who had originally protested it. The tax at issue is valid and the thirty-day notice of challenge to the legality of the tax in N.C.G.S. § 105-267 does not control the decision. The General Assembly here took a uniformly applicable intangibles tax that was valid and enforceable and attempted to classify retroactively those taxpayers who will not be liable for the tax. Such a scheme violates the uniformity provision of the North Carolina Constitution.

Justice WYNN did not participate in the consideration or decision of the case.

Justice FRYE concurring in the result.

Justice WHICHARD joins in the concurring opinion.

On discretionary review prior to determination by the Court of Appeals, granted by the Supreme Court *ex mero motu* pursuant to N.C.G.S. § 7A-31(a) and Rule 15(e)(2) of the North Carolina Rules of

Appellate Procedure, of orders entered 23 May 1997 and 11 June 1997 by Manning, J., in Superior Court, Wake County. Heard in the Supreme Court 1 October 1998.

*G. Eugene Boyce, and Womble Carlyle Sandridge & Rice, P.L.L.C., by William C. Raper and Keith Vaughan, for plaintiff-appellants.*

*Michael F. Easley, Attorney General, by Edwin M. Speas, Jr., Chief Deputy Attorney General; Thomas F. Moffitt, Special Deputy Attorney General; and Marilyn R. Mudge, Assistant Attorney General, for defendant-appellees.*

ORR, Justice.

This action arises out of plaintiffs' challenge to the constitutionality of the intangibles tax imposed by the State of North Carolina pursuant to N.C.G.S. § 105-203 during the tax years from 1991 through 1994. Prior to plaintiffs' filing this suit, a similar constitutional challenge was brought by Fulton Corporation, a North Carolina corporation which held stock in six other corporations, only one of which did business in North Carolina. Since the present case was stayed pending the ultimate determination in *Fulton*, we begin our discussion by reviewing that course of litigation since the resolution in *Fulton* affects the ultimate result here.

For a number of years, the State of North Carolina imposed an intangibles tax pursuant to N.C.G.S. § 105-203 on the fair-market value of shares of stock owned by North Carolina taxpayers on December 31st of each year. The statute provided, in pertinent part:

All shares of stock . . . owned by residents of this State . . . shall be subject to an annual tax, which is hereby levied, of twenty-five cents (25 cents) on every one hundred dollars ($100.00) of the total fair market value of the stock on December 31 of each year less the proportion of the value that is equal to:

(1) . . . the proportion of the dividends upon the stock deductible by the taxpayer in computing its income tax liability under G.S. 105-130.7 . . . .

N.C.G.S. § 105-203(1) (1992) (repealed 1995).

Under the tax scheme, if a corporation does no business in North Carolina and has no taxable income here, then the taxable percentage of a shareholder's stock is one hundred percent. If a

multistate corporation does business in North Carolina and earns business and/or nonbusiness income subject to North Carolina income tax, then the taxable percentage of a shareholder's stock is the inverse of the issuing corporation's net taxable income in North Carolina.

*Fulton Corp. v. Justus*, 110 N.C. App. 493, 496, 430 S.E.2d 494, 496 (1993).

On 1 May 1991, Fulton Corporation challenged the constitutionality of the intangibles taxing scheme alleging specifically that N.C.G.S. § 105-203 violates the Commerce Clause of the United States Constitution, as it places a heavier tax burden on stock of corporations not doing business in North Carolina. Further, the plaintiff alleged that the taxing scheme violated its due process and equal protection rights accorded by the United States and North Carolina Constitutions. The trial court granted summary judgment for the defendant Secretary of Revenue, and the plaintiff appealed.

The Court of Appeals subsequently held

that the portion of the State's intangibles tax scheme which increases the tax liability for owners of stock in corporations whose business and property is not completely in North Carolina violates the Commerce Clause of the United States Constitution. That language is excised from N.C. Gen. Stat. § 105-203. Plaintiff is entitled to no refund. The trial court's judgment for the defendant is reversed, and the cause is remanded for entry of a judgment declaring the intangibles tax provision at issue in violation of the Commerce Clause. Plaintiff is entitled to no further relief.

*Id.* at 505, 430 S.E.2d at 502.

On appeal, this Court in *Fulton Corp. v. Justus*, 338 N.C. 472, 450 S.E.2d 728 (1994), reversed the Court of Appeals. "After carefully reviewing the [U.S.] Supreme Court's jurisprudence in this area of the law, which the Court itself has characterized as a 'quagmire,' (citations omitted), we conclude that the tax in question is permissible based on the Court's holding in *Darnell*." *Id.* at 476-77, 450 S.E.2d at 731. Thus, this Court, after a thorough review of precedent decided by the United States Supreme Court, concluded that the intangibles taxing scheme as enacted by the legislature was valid and enforceable in its entirety. However, this determination was not final since the United States Supreme Court on 17 April 1995 granted plaintiff's

**SMITH v. STATE**

[349 N.C. 332 (1998)]

writ of certiorari to review our decision validating the intangibles taxing scheme.

On 21 February 1996, the United States Supreme Court in *Fulton Corp. v. Faulkner*,[1] 516 U.S. 325, 133 L. Ed. 2d 796 (1996), held:

> North Carolina's intangibles tax facially discriminates against interstate commerce . . . . At the same time, of course, it is true that "a State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination." *McKesson [Corp.] v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 39-40, 110 L. Ed. 2d 17, [38] (1990). In *McKesson*, for example, we said that a State might refund the additional taxes imposed upon the victims of its discrimination or, to the extent consistent with other constitutional provisions (notably due process), retroactively impose equal burdens [on] the tax's former beneficiaries. A State may also combine these two approaches. *Ibid.* These options are available because the Constitution requires only that "the resultant tax actually assessed during the contested period reflec[t] a scheme that does not discriminate against interstate commerce." *Id.*, at 41, 110 L. Ed. 2d [at 39].

*Fulton*, 516 U.S. at 346-47, 133 L. Ed. 2d at 814-15. The case was then remanded to this Court for consideration of remedial issues.

On 10 February 1997, in *Fulton Corp. v. Faulkner*, 345 N.C. 419, 481 S.E.2d 8 (1997) ("*Fulton* (on remand)"), this Court stated:

> The plaintiff argues that the United States Supreme Court in this case declared the entire intangibles tax unconstitutional. We do not agree with this interpretation. The Supreme Court noted that the Court of Appeals had addressed the issue of severability and decided that the clause required severance of the taxable percentage deduction. *Fulton [Corp.] v. Faulkner*, [516] U.S. at [347] n.12, 133 L. Ed. 2d at 815 n.12. The Court gave no indication that applying the severability clause in that manner would contravene its holding or that a tax on corporate stock is per se unconstitutional. To the contrary, the Court's language and reasoning revealed the intangibles tax violated the Commerce

---

1. Janice Faulkner replaced former defendant Betsy Y. Justus as Secretary of Revenue in 1993. Pursuant to N.C. R. App. P. 38(c), "[w]hen a person is a party to an appeal in an official or representative capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and [her] successor is automatically substituted as a party."

Clause because of the discriminatory portion—the taxable percentage deduction. It gave no reason to believe that absent the discriminatory deduction, the tax would violate the Commerce Clause.

*Fulton* (on remand), 345 N.C. at 422, 481 S.E.2d at 9-10.

Further, this Court stated that

[w]hether to enforce the tax as to all shareholders is within the province of the General Assembly.

The General Assembly may forgive this tax if it so chooses. We do not have the authority to do so.

We affirm that part of the decision of the Court of Appeals which holds that the unconstitutional part of N.C.G.S. § 105-203 must be severed and the balance of the section enforced.

*Id.* at 424, 481 S.E.2d at 11.

The effect of this Court's decision in *Fulton* (on remand) was to declare as advocated by the State that portion of the intangibles tax remaining, after severing the unconstitutional portion challenged, a valid and enforceable tax. Thus, the taxes paid by Fulton Corporation were not refundable as a matter of right.

As noted earlier, subsequent to the beginning of the *Fulton* litigation, plaintiffs in this case similarly filed suit challenging the constitutionality of the intangibles tax levied on corporate stock. On 27 December 1996, the trial court entered an order dated 27 December 1996 certifying two classes of plaintiffs, designated as Class A and Class B.

Class A members consisted of those who paid the intangibles tax for tax years 1991, 1992, 1993, and 1994, and demanded refunds of the tax within thirty days pursuant to the applicable refund statute, N.C.G.S. § 105-267 (1995) (amended 1996 for taxes paid on or after 1 November 1996). Class B consisted of taxpayers who paid the intangibles tax for the same years but failed to meet the requirements set forth in N.C.G.S. § 105-267.

On 27 December 1996, the trial court lifted the previous stay and ordered that the action be maintained as a class action on behalf of the two classes discussed above, Class A and Class B.

**SMITH v. STATE**

[349 N.C. 332 (1998)]

After this Court's opinion on 10 February 1997 in *Fulton* (on remand) responding to the ruling of the United States Supreme Court, the State was faced with two choices as noted in the opinion. The State could "enforce" the intangibles tax against all concerned, or the State could "forgive" the taxes imposed.

The General Assembly responded by enacting Chapter 17 of the 1997 Session Laws which provides as follows:

> AN ACT TO PROHIBIT THE ASSESSMENT OF INTANGIBLES TAX FROM TAXPAYERS WHO BENEFITED FROM THE TAXABLE PERCENTAGE DEDUCTION IN THE FORMER INTANGIBLES TAX STATUTE.
>
> Whereas, former G.S. 105-203 (repealed) imposed an intangibles tax on shares of stock and provided a taxable percentage deduction reducing a taxpayer's liability for this tax in proportion to the issuing company's income taxed in North Carolina; and
>
> Whereas, the United States Supreme Court in "Fulton Corporation v. Faulkner" held the taxable percentage deduction to discriminate against interstate commerce in violation of the United States Constitution and remanded the case to the Supreme Court of North Carolina to address the remedy appropriate to redress the constitutional violation; and
>
> Whereas, the Supreme Court of North Carolina in "Fulton Corporation v. Faulkner" (on remand) held that the taxable percentage deduction was severable from former G.S. 105-203, thereby exposing all taxpayers to liability for taxation under G.S. 105-203, including those who were not required to pay the tax on shares of stock, in whole or in part, by virtue of the taxable percentage deduction; and
>
> Whereas, the Secretary of Revenue has been advised by the Attorney General that the Supreme Court of North Carolina's decision requires assessment and collection of intangibles tax from taxpayers who received the benefit of the taxable percentage deductions in former G.S. 105-203, unless the General Assembly directs otherwise; and
>
> Whereas, the Supreme Court of North Carolina provided in "Fulton Corporation v. Faulkner" (on remand) that "[w]hether to enforce the tax as to all shareholders is within the province of the General Assembly"; Now, therefore,

**SMITH v. STATE**

[349 N.C. 332 (1998)]

*The General Assembly of North Carolina enacts:*

**Section 1.** The Secretary of Revenue shall take no action to assess or collect intangibles tax from any taxpayer for liability arising solely from the taxpayer's use of the taxable percentage deductions in former G.S. 105-203 (repealed) for one or more of the tax years from 1990 through 1994.

Act of Apr. 10, 1997, ch. 17, sec. 1, 1997 N.C. Sess. Laws 51, 51.

Having thus forgiven the tax liability for the group of taxpayers who had benefited from the unconstitutional taxable percentage deduction for intangible taxes, the General Assembly was required to address the status of the other taxpayers who had paid the full intangibles tax. As a result, the General Assembly enacted Chapter 318 of the 1997 Session Laws, which provides in pertinent part:

> AN ACT TO DIRECT THE SECRETARY OF REVENUE TO (1) MAKE REFUNDS OF THE INTANGIBLES TAX TO TAXPAYERS WHO PRESERVED THEIR RIGHT TO A REFUND BY PROTESTING PAYMENT WITHIN THE TIME LIMITS SET BY G.S. 105-267 AND (2) NOTIFY AFFECTED INTANGIBLES TAXPAYERS BY MAIL AS SOON AS POSSIBLE OF THE COURT NOTICE IN THE CLASS ACTION LAWSUIT REGARDING REFUNDS.

*The General Assembly of North Carolina enacts:*

**Section 1.** Because the General Assembly has enacted S.L. 1997-17, prohibiting the Secretary of Revenue from collecting intangibles tax liability arising from a taxpayer's use of the taxable percentage deductions in former G.S. 105-203 (repealed) for any of the tax years from 1990 through 1994, G.S. 105-267 as it applies to those tax years entitles a taxpayer to a refund for one or more of those tax years to the extent the taxpayer meets all of the following requirements with respect to the applicable tax year:

(1) The taxpayer paid intangibles tax on shares of stock for the tax year.

(2) The taxpayer protested payment of the tax within 30 days of payment and met the other requirements of G.S. 105-267, as it then existed, to establish and preserve the taxpayer's refund claim for the tax year.

(3) The taxpayer's established and preserved refund claim was pending on February 21, 1996, the date the United States Supreme Court held the taxable percentage deduction in former G.S. 105-203 unconstitutional.

Act of July 22, 1997, ch. 318, sec. 1, 1997 N.C. Sess. Laws 771, 771. Thus, Chapter 318 in part bases the right to have the intangibles taxes paid by plaintiffs retroactively forgiven on the notice requirement set forth in N.C.G.S. § 105-267, as it then existed. That statute provided:

No court of this State shall entertain a suit of any kind brought for the purpose of preventing the collection of any tax imposed in this Subchapter. Whenever a person shall have a valid defense to the enforcement of the collection of a tax assessed or charged against him or his property, such person shall pay such tax to the proper officer, and such payment shall be without prejudice to any defense of rights he may have in the premises. At any time within 30 days after payment, the taxpayer may demand a refund of the tax paid in writing from the Secretary of Revenue and if the same shall not be refunded within 90 days thereafter, may sue the Secretary of Revenue in the courts of the State for the amount so demanded. Such suit may be brought in the Superior Court of Wake County, or in the county in which the taxpayer resides at any time within three years after the expiration of the 90-day period allowed for making the refund. If upon the trial it shall be determined that such a tax or any part thereof was levied or assessed for an illegal or unauthorized purpose, or was for any reason invalid or excessive, judgment shall be rendered therefor, with interest, and the same shall be collected as in other cases. The amount of taxes for which judgment shall be rendered in such action shall be refunded by the State; provided, nothing in this section shall be construed to conflict with or supersede provisions of G.S. 105-241.2.

After the passage of Chapter 17 but before the passage of Chapter 318, the trial court in this case on 11 June 1997 entered judgment for Class A plaintiffs against defendants. In a separate order also dated 11 June 1997, the trial court decertified the Class B plaintiffs as a class and dismissed their claims. The trial court's decision against Class B plaintiffs was based on N.C.G.S. § 105-267 and the thirty-day requirement to give notice of any protest as to the validity of the tax.

Thus, the issue brought forward to this Court is whether the trial court erred in dismissing the claims of the Class B plaintiffs—those individuals who paid the intangibles tax for the years in question but did not give notice challenging the legality of the tax. For the reasons that follow, we hold that the trial court erred in dismissing their claims.

We begin by clarifying the status of the intangibles tax after *Fulton* (on remand), 345 N.C. 419, 481 S.E.2d 8. Consistently, the intangibles tax has been referred to by the parties as if it were an illegal or unconstitutional tax, when in fact only the deduction was held by the United States Supreme Court to be unconstitutional. By severing the offending deduction as requested by the State, this Court specifically held in *Fulton* (on remand) that the remaining tax was valid and constitutional. Therefore, the taxes paid by plaintiffs in both Class A and Class B were proper and enforceable. In light of that holding, the thirty-day notice provision of N.C.G.S. § 105-267 upon which the trial court dismissed Class B plaintiffs' claims does not control the decision in this case. The tax at issue here is valid, and plaintiffs were not entitled to *any* refund. What did transpire was that the General Assembly made a policy decision by enacting Chapter 17 and mandating that the State not assess taxes against those who had previously avoided paying the intangibles tax. Having made that decision, the General Assembly was required as a constitutional matter to "forgive" the taxes of those taxpayers who had paid the tax or else run afoul again of the United States Supreme Court's decision in *Fulton*, 516 U.S. 325, 133 L. Ed. 2d 796. Thus, the real question is whether the General Assembly's determination in Chapter 318 to pay back only those taxpayers who had originally protested the intangibles tax within thirty days of payment and to not pay back those who did not give notice can be affirmed. We conclude it cannot.

Beginning with 1868, there has been a provision in the North Carolina Constitution relating to the uniformity of taxation. Article V, Section 3 provided: "Laws shall be passed taxing, *by a uniform rule*, all moneys, credits, investments in bonds, stocks, joint-stock companies or otherwise . . . ." 1868 N.C. Const. art. V, § 3 (emphasis added).

Today, that provision is carried over in part into Article V, Section 2(2) of our current Constitution. "Only the General Assembly shall have the power to classify property for taxation, which power shall be exercised only on a State-wide basis and shall not be delegated. No class of property shall be taxed *except by uniform rule* . . . ." N.C.

Const. art. V, § 2(2) (emphasis added). As noted in *Hajoca Corp. v. Clayton*, 277 N.C. 560, 178 S.E.2d 481 (1971), "[t]he Constitution does not permit a state to levy a tax which discriminates in favor of or against taxpayers in the same classification. . . . 'All taxes on property in this State for the purpose of raising revenue are imposed under the rule of uniformity. In express terms the Constitution requires that laws shall be passed taxing real and personal property . . . by a uniform rule." *Id.* at 567-68, 178 S.E.2d at 486 (quoting *Roach v. City of Durham*, 204 N.C. 587, 591, 169 S.E. 149, 151 (1933)).

"Uniformity of taxation is accomplished when the tax is levied equally and uniformly on all subjects in the same class. The right to classify imports a difference in the subjects of taxation." *Roach*, 204 N.C. at 592, 169 S.E. at 151.

Here, the General Assembly by virtue of its passage of Chapters 17 and 318 of the 1997 Session Laws of North Carolina has taken a uniformly applicable intangibles tax that was valid and enforceable after *Fulton* (on remand) and attempted to classify retroactively those taxpayers who will not be liable for the tax. By virtue of Chapter 17, all of the taxpayers who benefited from the unconstitutional deduction provision and who obviously gave no notice of any challenge to the validity of the taxing scheme are relieved of tax liability. By virtue of Chapter 318, those Class A taxpayers who paid the valid tax but gave timely notice of a challenge to its validity under N.C.G.S. § 105-267 are relieved of tax liability. Only Class B plaintiffs in this appeal are thus left with no relief. Like their fellow taxpayers in Class A, they paid the intangibles tax; like their fellow taxpayers who took the deduction, they filed no notice contesting the statute's validity. However, unlike these other two classes of taxpayers, plaintiffs in Class B are still liable under Chapter 318 for the taxes they have paid. Such a scheme violates the uniformity provision of the North Carolina Constitution and therefore must fail.

The decision of the trial court dismissing plaintiffs' claim is reversed, and the case is remanded for entry of a judgment consistent with this opinion and the U.S. Supreme Court's decision in *Fulton v. Faulkner*.

REVERSED.

Justice WYNN did not participate in the consideration or decision of this case.

SMITH v. STATE

[349 N.C. 332 (1998)]

Justice FRYE concurring in result.

In two cases, *Bailey v. State*, 330 N.C. 227, 412 S.E.2d 295 (1991) (*Bailey I*), *cert. denied*, 504 U.S. 911, 118 L. Ed. 2d 547 (1992), and *Swanson v. State*, 335 N.C. 674, 441 S.E.2d 537, *cert. denied*, 513 U.S. 1056, 130 L. Ed. 2d 598 (1994), this Court held that the protest requirements of N.C.G.S. § 105-267 were valid and enforceable. In *Bailey v. State*, 348 N.C. 130, 500 S.E.2d 54 (1998) (*Bailey II*), we held that certain taxpayers were entitled to refunds notwithstanding their failure to comply with the protest requirements of N.C.G.S. § 105-267. This was so, the majority there said, because "the purpose underlying the requirements of section 105-267 is to put the State on *notice* that a tax, or a particular application thereof, is being challenged as improper so that the State might properly budget or plan for the potential that certain revenues derived from such tax have to be refunded." *Bailey II*, 348 N.C. at 166, 500 S.E.2d at 75.

Likewise, in the instant case, the State was put on notice by the filing of a lawsuit challenging the constitutionality of the intangibles tax levied on corporate stock and by the refund demands made pursuant to N.C.G.S. § 105-267 by the plaintiffs designated as Class A. Thus, in this case, as in *Bailey II*, the State had notice of the possibility that the tax, or a portion thereof, would be declared unconstitutional and had the opportunity to plan and budget for potential refunds. In fact, the United States Supreme Court held that "North Carolina's intangibles tax facially discriminates against interstate commerce," *Fulton Corp. v. Faulkner*, 516 U.S. 325, 346, 133 L. Ed. 2d 796, 814 (1996), and this Court, on remand, held that "the unconstitutional part of N.C.G.S. § 105-203 must be severed," *Fulton Corp. v. Faulkner*, 345 N.C. 419, 424, 481 S.E.2d 8, 11 (1997). Therefore, I would hold that the reasoning of *Bailey II* applies to the Class B plaintiffs in this case, entitling them to a refund of the taxes paid under the unconstitutional intangibles tax scheme, notwithstanding their failure to follow the protest requirements of N.C.G.S. § 105-267.

Accordingly, for the reasons stated herein and not for the reasons stated in the majority opinion, I concur in the result reached by the Court.

Justice WHICHARD joins in this concurring opinion.