## A. A. JONES v. COUNTY BOARD OF EDUCATION OF GUILFORD COUNTY.

(Filed 11 April, 1923.)

1. **Schools — School Districts — Taxation—Bonds—Elections—Necessary Expenses—Constitutional Law.**

    A school district comes within the provisions of our State Constitution, Art. VII, sec. 7, requiring a majority vote of the qualified voters therein for it to "contract any debt, pledge its faith, or loan its credit," etc., except for necessary expenses.

2. **Same.**

    The building and maintenance of schoolhouses by a school district is not for necessary expenses within the meaning of the Constitution, Art. VII, sec. 7. The construction of Art. VIII, sec. 3, State Constitution, requiring that public schools shall be maintained at least six months in every year, is not involved in case.

3. **Statutes—Interpretation—Several Sections.**

    A statute should be construed as a whole to give effect to all of the expressions therein used, regarding none of them as surplusage when they can reasonably be given effect, and the fact that the act consists of several sections is immaterial in the application of the rule of construction.

4. **Same—Schools—School Districts—Taxation—Bonds.**

    Where the first section of a statute merely prescribes the means of ascertaining the will of the voters in a school district upon the question of borrowing money or issuing bonds for the erection and maintenance of school buildings within the district, and in other sections are found expressions clearly indicating that the borrowing of money and the issuance of bonds was intended, the intent of the act must be gathered from the expressions found in its various sections, and bonds issued thereunder with the approval of the voters of the district at an election duly held, upon full notice, are valid obligations of the district issuing them accordingly; and, also, *Held*, that a later reënactment of this statute cured its defects, if any therein existed.

5. **Same—Implied Powers.**

    A provision of a statute authorizing a school district to borrow money for public school purposes implies the power incidental to the execution of the proper evidence of indebtedness therefor, such as the giving of the corporate notes or the issuance of its bonds, with the power to levy the taxes necessary to pay the bonds, principal, and interest.

6. **Same—Constitutional Law—Benefits.**

    The legislative authority given to a school district to borrow money implies the power to raise money for the public use on the pledge of the public credit for the designated purposes, and it may be exercised to meet either present or anticipated expenses and liabilities for those purposes, and also to issue in return for borrowed money its obligations in any appropriate form, whether bonds, bills, or notes; and *Held*, the statute under construction on this appeal did not limit the sum authorized to be borrowed to that to be raised by the annual tax in any one year.

**7. Same.**

> Where a school district has been established coterminous with the boundary of a county, excepting a city and a district therefrom, and under legislative authority the county commissioners at the request of the county board of education have called an election, under statutory provisions, to pass upon the question of borrowing money and issuing bonds for public school buildings and school maintenance, etc., to be paid out of funds to be derived from special taxes within the school district, and at the election lawfully held a majority of the qualified voters in the school district have approved of the question submitted to them: *Held*, the statute under which the tax is to be levied is not unconstitutional as a taxing of the territory of the county excepted from the school district for the sole benefit of the territory included therein, but only a taxing of that part of the county within the school district to be advantaged, through the agency of the county board of education.

**8. Statutes — Uncertainty — Schools—School Districts—Taxation—Automatic Decrease in Tax Rates—Appeal and Error.**

> Where a statute authorizes a public school district to borrow money and pledge its credit for the erection of schoolhouses and the maintenance of its schools, its validity is not affected for uncertainty by a proviso that the tax rate shall automatically decrease upon the increase of valuation of property within the district; and the contingency not having arisen in this case, *it is held* that a discussion of the appellant's exception is unnecessary at this time.

APPEAL by plaintiff from *Stack, J.*, at chambers. From GUILFORD.

Controversy without action upon an agreed statement of facts, the substance of which is herein set out.

On 21 February, 1921, the General Assembly enacted chapter 131 of the Public-Local Laws of 1921, entitled "An act to equalize school advantages in Guilford County, North Carolina." This act was amended on 5 March, 1921 (Public-Local Laws, ch. 375), by authorizing the county board of education (if the original act should be approved) to appoint two additional members of said board, and again at the Extra Session 1921 of the General Assembly by changing the form of the ballot prescribed in section one and by increasing the maximum amount of the indebtedness to be incurred from $250,000 to $500,000. On 6 March, 1922, at the request of the county board of education the board of county commissioners called an election and submitted to the qualified voters in the designated territory the question of levying and annually collecting in said territory a special tax not to exceed ten cents on property valued at $100 for building purposes and not to exceed fifteen cents on a like valuation for school maintenance, in addition to the school taxes then authorized, except as otherwise provided in the act. The election was held on 25 April, 1922, and a majority of the qualified voters voted "For abolishing all local school taxes and adopting a county-wide equalizing tax," in accordance with the provisions of the

original act and the amendments thereto. Notice of the election was given as follows:

The General Assembly of North Carolina having ratified, on 21 February, 1921, "An act to equalize school advantages in Guilford County, North Carolina," the same having been amended by an act ratified 14 December, 1921, and the county board of education, in accordance with section one of said act, and amendments thereto, having made written request for an election to be held, it is ordered that the election be held on Tuesday, 25 April, 1922, to ascertain the will of the people whether all special school taxes in Guilford County outside of the city of Greensboro and the township of High Point be repealed, and that an additional tax of not exceeding ten cents on the $100 valuation of property for building purposes, and not exceeding 15 cents on the $100 valuation of property for school maintenance be annually levied and collected in all of Guilford County, with the exception of the city of Greensboro and the township of High Point. That at said election those who favor equalizing school advantages in Guilford County by abolishing all local taxes and substituting in lieu thereof the county-wide tax shall vote a ballot on which shall be written or printed the words: "For abolishing all local school taxes and adopting a county-wide equalizing tax," and those opposed a ballot on which shall be written or printed the words: "Against abolishing all local school taxes and adopting a county-wide equalizing tax."

Chapter 375, Public-Local Laws of 1921 and chapter 38 of Public-Local Laws, Extra Session of 1921, were not enacted in the matter provided by Art. II, sec. 14, of the Constitution of North Carolina, but on 26 February, 1923, the General Assembly enacted and ratified an act which is entitled "An act to reënact an act entitled 'An act to equalize school advantages in Guilford County, North Carolina,' ratified 21 February, 1921, and the acts amendatory thereof, and also to validate proceedings taken under said acts, and to provide for the issuance of obligations to evidence indebtedness authorized by said acts and proceedings." This act in express terms reënacts chapter 131, Public-Local Laws of 1921, and the amendments thereto, and ratifies and validates the election held on 25 April, 1922. It also provides that when the county board of education shall borrow money under the provisions of section seven and the amendments the board may issue in its corporate name negotiable bonds, notes, or other evidences of indebtedness and to renew or fund such obligations from time to time by issuing other obligations of like character, the total amount not to exceed $500,000. Provision is made for the form and denomination of such obligations, the payment of the interest thereon, the manner of sale, the funds out of which payment shall be made, and the tax to be levied. Section 4 is as follows: "A majority of the qualified voters in

the territory subject to the said special tax, having, at the said election held on 25 April, 1922, approved by statutes hereby reënacted, including the provisions of said statutes authorizing the borrowing of money for erecting and equipping school buildings, no further election shall be necessary to enable the county board of education of Guilford County to issue obligations as herein provided."

The defendants, acting as the county board of education of Guilford County, are about to borrow $500,000 and issue serial bonds in the corporate name of said board of education in said amount, pursuant to section 7 of said chapter 131 of the Public-Local Laws of 1921, regular session, as amended by said chapter 38 of the Public-Local Laws of 1921, Extra Session, and also pursuant to the said vote of the people and the said act ratified 26 February, 1923; and they will do so unless restrained by an order of this Court, and the said bonds will be issued in the present year, and will be made payable in annual installments beginning one year after the date of issue of the bonds and ending not exceeding thirty years after said date of issue.

The present assessed valuation of taxable property upon which the special tax of not exceeding ten cents on the $100 valuation of property for building purposes is authorized by section 1 of said chapter 131 of the Public-Local Laws of 1921, regular session, to be levied, is between $60,000,000 and $70,000,000, and the said tax for the present year will therefore amount to between $60,000 and $70,000. On 21 February, 1921, when said act was enacted and took effect, the assessed valuation of said taxable property was substantially the same as said present assessed valuation.

The action was brought to enjoin the defendant from issuing the proposed bonds. His Honor refused the plaintiff's motion for an injunction and adjudged that the bonds would be valid obligations when issued pursuant to the several acts referred to herein. The plaintiff excepted and appealed.

*R. M. Robinson for the plaintiff.*
*John N. Wilson for the defendant.*

ADAMS, J. The plaintiff contends that the defendant has no legal right either to borrow money or to issue bonds for the purposes stated in the case agreed and assigns in support of his position four distinct grounds, each of which requires investigation.

1. His first proposition is this: At the election held on 25 April, 1922, the vote was confined to the question of levying a tax and did not include that of borrowing money or issuing bonds, and hence both borrowing the money and issuing the bonds are inhibited by the organic

law.   The constitutional provision relied on as the basis of the proposition is as follows: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."   Const., Art. VII, sec. 7.

It has been held that a taxing district of the character described is within this constitutional provision and that the subject of the proposed tax is not a necessary expense; in fact, the defendant does not contend that it is.   The requirement that public schools shall be maintained at least six months in every year is not involved.   Const., Art. VIII, sec. 3; *Williams v. Comrs.,* 176 N. C., 554; *Bennett v. Comrs.,* 173 N. C., 625; *Ellis v. Trustees,* 156 N. C., 10.   The plaintiff's proposition must therefore be dealt with upon the assumption that the proposed indebtedness is not to be incurred for an expense which is necessary within the meaning of the constitutional inhibition.

It is true, as contended by the plaintiff, that the first section of the original act merely prescribes the means of ascertaining the will of the voters and does not in express terms embrace the question either of borrowing money or issuing bonds; but in several other sections are found the two expressions "If a majority of the qualified voters favor the additional school tax" and "If this act is approved by a majority of the qualified voters."   These expressions are not to be treated as surplusage, but on the contrary as importing special significance.   In order to discover and give effect to the legislative intent we must consider the act as a whole, having due regard to each of its express provisions; for there is no presumption that any provision is useless or redundant. That the act consists of several sections is altogether immaterial on the question of its unity.   "The construction of a statute can ordinarily be in no wise affected by the fact that it is subdivided into sections or titles.   A statute is passed as a whole and not in parts or sections and is animated by one general purpose or intent.   Consequently the several parts or sections of an act are to be construed in connection with every other part or section and all are to be considered as parts of a connected whole and harmonized, if possible, so as to aid in giving effect to the intention of the lawmakers."   25 R. C. L., 1009, sec. 248.

The only way in which the will of the voters was to be ascertained is found in the first section of the act referred to, and in this way and by this method a majority of the qualified voters manifested their approval, not only of the proposed additional tax, but of all the provisions of the act which were necessary to accomplish the ultimate legislative purpose.   For not only as a public-local law, but as a law particularly mentioned in the published notice of the election, did the

original act impart to every voter constructive notice of all its pro-visions.

We must therefore assume that those who voted in the election knew that approval of the act would be equivalent to authorizing the defendant with the sanction of the Legislature to borrow money for the purposes set out in section seven; and the power to borrow money implies the power incidentally to execute the proper evidence of the indebtedness so incurred.   In *Charlotte v. Shepard,* 122 N. C., 602, it is held that where a municipal corporation by authority of the Legislature and the approval of a majority of the qualified voters acquires the right to create a debt and issue bonds, it is clothed with power to levy the taxes necessary to pay the bonds and the accruing interest.    There the Court says: "When such corporation has thus acquired the right to create the debt and to issue the bonds, this power carries with it the power to levy the taxes necessary to pay said bonds and the accruing interest thereon.    *Rawls County Court v. U. S.,* 105 U. S., 733; *U. S. v. New Orleans,* 98 U. S., 381.    It is admitted that these cases are direct authority for this position, if there is no public law to the contrary, but it is suggested that Art. VII, sec. 7 of the Constitution, provides otherwise, and therefore the doctrine declared in these cases does not apply, and that it is neces-sary that the power to tax should be expressly granted in the legislative act.    We do not think Art. VII, sec. 7, nor any other provision of the Constitution, contains any such requirement as this.    If it did, we would feel bound by it, no matter what might be held to be the general rule in other jurisdictions.    That clause of Art. VII, sec. 7 of the Constitution, if intended to have any separate and independent mean-ing, was only intended to apply to such indebtedness as had not been submitted to the vote of the people."

In *Slocomb v. Fayetteville,* 125 N. C., 362, it appears that the de-fendant was authorized to create a municipal debt, but was not expressly empowered to levy the tax necessary to pay the bonds; and it was held on appeal that if a municipal corporation has the power to create a debt it has also the right to levy the necessary tax, because such right attaches by necessary implication.    If the right to create a debt carries with it the power to levy a tax to provide for payment, *a fortiori* does the right to levy a tax with which to pay back borrowed money essen-tially imply the right to issue the proper evidence of such obligation. Indeed, there are decisions which uphold the principle that a municipal corporation which has contracted or is authorized to contract a valid debt is empowered also to issue bonds as evidence of such debt.    *Bennett v. Comrs., supra; Comrs. v. Webb,* 148 N. C., 120; *McCless v. Meekins,* 117 N. C., 34; *Tucker v. Raleigh,* 75 N. C., 267; *Parvin v. Comrs.,* 177 N. C., 508; *Riddle v. Cumberland,* 180 N. C., 321.

The fact that the indebtedness may have been incurred for a neces-
sary expense does not affect the relevancy of the principle discussed
in these decisions, because in the instant case there is no controversy
as to the regularity of the election or the proper passage of the act
under which it was held.

We have not referred to the act ratified 26 February, 1920, because
in our judgment the defendant without its aid had the legal right to
issue the bonds, but by this act the former laws are reënacted and
the defendant is given express power to issue the necessary bonds in
its corporate name. In this way the right is doubly assured. The
plaintiff, as we understand, does not question the power of the Legis-
lature to enact this statute. *Belo v. Comrs.*, 76 N. C., 489; *Anderson
v. Wilkins*, 142 N. C., 154; *Edwards v. Comrs.*, 183 N. C., 58.

2. The plaintiff argues, in the second place, that even if the approval
of the proposed tax implies the power to borrow money the defendant
cannot borrow in any one year any amount in excess of that which
may be raised by the annual tax. He contends that the words "borrow
money" are generally understood to refer to short-term loans in antici-
pation of current revenue as distinguished from long-term bond issues;
but we do not think they are limited to this sense. They imply the
power to raise money for the public use on the pledge of the public
credit, and such power may be exercised to meet either present or
anticipated expenses and liabilities. As held in the Legal Tender Cases
it may be exercised to issue in return for borrowed money obligations
in any appropriate form, whether bonds, bills, or notes. 110 U. S., 421.
The right to borrow money as applied to a municipal corporation is a
power to create indebtedness and procure for its payment funds from
others to be paid at a future date. *Orchard v. School District*, 14 Neb.,
378. It is evidently in this sense that the term is used in section
seven, for the amended proviso obviously contemplates the possibility
of an indebtedness very much in excess of the amount to be derived
from any tax which may be annually levied and collected.

3. The plaintiff next says that the bonds, if issued in the name of
the defendant, would in effect become the obligations of the county
and that the General Assembly could not authorize the creation of a
county obligation for the benefit of a taxing district which does not
include the entire county. In support of the proposition he cites
*Comrs. v. Boring*, 175 N. C., 105, and *Comrs. v. Lacy*, 174 N. C., 141.

The difference between these cases is merely formal and in only one
or two phases to which we shall advert are they apparently relevant
to the question here presented. In substance they announce the doc-
trine that the Legislature is without power to require a county to give
its binding obligation for the payment of money on the application and

vote of a township or road district for the construction and maintenance of the roads of such township or district, since it is not within the legislative power to tax one community or local taxing district for the exclusive benefit of another. And in *Boring's case, Walker, J.,* adopts a quotation from Cooley on Taxation to the effect that the taxing district through which the tax is to be apportioned must be the district which is to be benefited by its collection and expenditure. This is exactly what the act of 1921 provides. The taxing district is not coterminous with the county and is not a political entity. It was provided therefore that the obligations of the district should be issued in the corporate name of the defendant and that they should be paid out of funds to be derived from the tax levied only in the district for building purposes or out of the special annual tax for building purposes authorized by the original act and the amendments. This is the only way devised for paying back the money to be borrowed, and we find nothing in the record which justifies the conclusion that the bonds when issued will become the general or unrestricted obligations of the defendant or of Guilford County. The special purpose of the tax is to erect buildings and maintain schools within the taxing district and these things are to be accomplished through the agency of the county board of education. *Faison v. Comrs.,* 171 N. C., 411.

4. The proviso in the first section of the original act is in this language: *Provided,* that if the General Assembly or the board of commissioners by authority of the General Assembly shall order a general increase in the valuation of property in said territory, then it shall operate to automatically decrease by the same percentage the maximum rates fixed in this section and vice versa.

The plaintiff contends that this proviso is void for uncertainty and that the entire act for this reason is ineffective. We do not concur in this conclusion. *Comrs. v. Boring, supra.* Moreover, it is altogether possible that no contingency will arise requiring judicial construction of the proviso and it is unnecessary at this time to discuss a question which is purely academic.

Finding no error we affirm the judgment.

Affirmed.