FULTON CORPORATION v. JANICE H. FAULKNER, SECRETARY OF REVENUE

No. 305A93-2

(Filed 10 February 1997)

**1. Taxation § 92 (NCI4th)— intangibles tax—unconstitutional taxable percentage deduction—severance from statute**

Where the United States Supreme Court held in *Fulton v. Faulkner,* —— U.S. —— (1996) that the intangibles tax imposed on corporate stock by former N.C.G.S. § 105-203 violated the Commerce Clause of the United States Constitution because of the taxable percentage deduction provided in that statute, the General Assembly provided a severability clause for the intangibles tax statute in N.C.G.S. § 105-215, and the offending portion of the intangibles tax statute and other parts of the statute were not so interrelated or mutually dependent that the tax could not

be imposed without reference to the offending part, the unconstitutional taxable percentage deduction will be severed from the statute and the remainder of the statute will be enforced.

**Am Jur 2d, State and Local Taxation §§ 197, 265.**

### 2. Taxation § 92 (NCI4th)— intangibles tax—severance of unconstitutional provision—retroactive application

The rule of this case that the taxable percentage deduction for corporate stock in the intangibles tax statute violates the Commerce Clause of the United States Constitution and that this unconstitutional portion of the statute will be severed and the remainder of the statute enforced is to be applied retroactively.

**Am Jur 2d, State and Local Taxation §§ 197, 265.**

Justice ORR dissenting.

Justices FRYE and LAKE join in this dissenting opinion.

On remand from the Supreme Court of the United States. Heard in the Supreme Court 9 September 1996.

In this action, the plaintiff has challenged the intangibles tax formerly imposed by N.C.G.S. § 105-203 on the ground it violates the Commerce Clause of the Constitution of the United States. N.C.G.S. § 105-203 provided for an annual tax of $0.25 on each $100.00 of the fair market value of all shares of stock on 31 December of each year. The section provided for a reduction of this tax in proportion to the issuing company's income taxed in North Carolina. It is this reduction which the plaintiff says violates the Commerce Clause.

The superior court allowed a motion for summary judgment by the defendant, upholding the tax. The Court of Appeals reversed. *Fulton Corp. v. Justus*, 110 N.C. App. 493, 430 S.E.2d 494 (1993). It did not order a refund, however, but severed the offending part of N.C.G.S. § 105-203 and ordered that the intangibles tax be paid without any reduction for income taxes paid to the State.

This Court reversed the Court of Appeals. *Fulton Corp. v. Justus*, 338 N.C. 472, 450 S.E.2d 728 (1994). We held that the reduction in the intangibles tax did not offend the Commerce Clause. On 18 April 1995, the General Assembly repealed the intangibles tax in its entirety effective 1 January 1995. Act of April 18, 1995, ch. 41, sec. 1(b), 1995 N.C. Sess. Laws 84. The legislation also provided that the repeal

FULTON CORP. v. FAULKNER

[345 N.C. 419 (1997)]

does not affect the rights or liabilities of the State, a taxpayer, or another person arising under a statute amended or repealed by this act before its amendment or repeal; nor does it affect the right to any refund or credit of a tax that would otherwise have been available under the amended or repealed statute before its amendment or repeal.

*Id.* sec. 11, 1995 N.C. Sess. Laws at 88.

The Supreme Court of the United States reversed this Court. *Fulton Corp. v. Faulkner,* —— U.S. ——, 133 L. Ed. 2d 796 (1996). It held that the reduction violated the Commerce Clause and remanded the case to this Court to fashion a remedy.

We ordered that the parties "brief the question of why, in light of the decision of the Supreme Court of the United States in this case, this Court should not affirm the decision of the North Carolina Court of Appeals."

*Womble Carlyle Sandridge & Rice, PLLC, by Jasper L. Cummings, Jr., for plaintiff-appellee.*

*Michael F. Easley, Attorney General, by Andrew A. Vanore, Jr., Chief Deputy Attorney General, Edwin M. Speas, Jr., Senior Deputy Attorney General, Thomas F. Moffitt, Special Deputy Attorney General, and Marilyn R. Mudge, Assistant Attorney General, for defendant-appellant.*

*Womble Carlyle Sandridge & Rice, PLLC, by G. Eugene Boyce, of counsel, amicus curiae.*

WEBB, Justice.

[1] This case brings to the Court the question of the remedy to be applied after a portion of the intangibles tax statute has been declared unconstitutional. The Court of Appeals held that the part of the statute which was unconstitutional should be severed and that the balance of the statute should be enforced. This would leave the intangibles tax to be enforced without any reduction for income taxes paid to this State. We believe the Court of Appeals was correct in this holding.

In determining whether an unconstitutional part of a statute should be severed and the rest of the statute enforced, we look first at the intention of the General Assembly. If the legislature intended that the constitutional part of the statute be enforced after the other

part has been declared unconstitutional, and if the separate parts of the statute are not so interrelated and mutually dependent that one part cannot be enforced without reference to another, the offending part must be severed and the rest of the statute enforced. *Flippin v. Jarrell*, 301 N.C. 108, 117, 270 S.E.2d 482, 488 (1980); *Constantian v. Anson County*, 244 N.C. 221, 228, 93 S.E.2d 163, 168 (1956).

The General Assembly has stated its intention. N.C.G.S. § 105-215 provided in part:

> If any clause, sentence, paragraph, or part of this Article or schedule shall for any reason be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder of this Article or schedule, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof directly involved in the controversy in which such judgment shall have been rendered.

N.C.G.S. § 105-215 (1992) (repealed 1995). We believe this section shows clearly that the General Assembly intended that if any part of the statute providing for an intangibles tax was declared unconstitutional, that part should be severed from the statute, and the balance of the statute should be enforced.

In this case, the offending portion of the intangibles tax statute and the other parts of the statute were not so interrelated or mutually dependent that the imposition of the tax could not be done without reference to the offending part. The valid part is complete in itself and capable of enforcement.

The plaintiff argues that the United States Supreme Court in this case declared the entire intangibles tax unconstitutional. We do not agree with this interpretation. The Supreme Court noted that the Court of Appeals had addressed the issue of severability and decided that the clause required severance of the taxable percentage deduction. *Fulton v. Faulkner*, —— U.S. at —— n.12, 133 L. Ed. 2d at 815 n.12. The Court gave no indication that applying the severability clause in that manner would contravene its holding or that a tax on corporate stock is per se unconstitutional. To the contrary, the Court's language and reasoning revealed the intangibles tax violated the Commerce Clause because of the discriminatory portion—the taxable percentage deduction. It gave no reason to believe that absent the discriminatory deduction, the tax would violate the Commerce Clause.

The defendant asserts and the plaintiff agrees that it was the intention of the General Assembly that if the taxable percentage reduction were to be held unconstitutional, it should not be severed from N.C.G.S. § 105-203, and the whole section must fail. They concede that N.C.G.S. § 105-215 provides for the severance of any part of the statute which is declared unconstitutional. They say, relying on *State ex rel. Andrews v. Chateau X, Inc.*, 296 N.C. 251, 259-60, 250 S.E.2d 603, 609 (1979), *judgment vacated on other grounds*, 445 U.S. 947, 63 L. Ed. 2d 782 (1980), and *Sheffield v. Consolidated Foods Corp.*, 302 N.C. 403, 421-22, 276 S.E.2d 422, 434-35 (1981), that the "presence of a severability clause is not conclusive but provides some guidance to the courts as to legislative intent." They say we must look at all relevant parts of the statute to discern legislative intent.

The plaintiff and defendant contend that the General Assembly, since the inception of the intangibles tax, has never intended to tax all stocks and that by severing the unconstitutional part of N.C.G.S. § 105-203, the Court of Appeals has broadened the tax contrary to the legislative will. They argue that the taxable percentage deduction has always been an essential element of the tax and an expression of the legislative intent not to tax all shares of corporate stock. They argue that we should hold all of N.C.G.S. § 105-203 unconstitutional.

We do not agree with the parties' interpretation of *Andrews* and *Sheffield. Andrews* involved an action to abate a nuisance. We held that assuming one of the remedies provided in the statute was unconstitutional, it could be severed from the statute and the other remedies enforced. We said that severability depended on the will of the General Assembly. *Andrews*, 296 N.C. at 259-60, 250 S.E.2d at 608-09. We did not say how that will was to be discovered, but simply referred to the portion of the statute which provided for severability. *Sheffield* dealt with disclosures required by the North Carolina Tender Offer Disclosure Act, N.C.G.S. ch. 78B (1977). In that case we held that the Act did not apply to purchases of stock in the open market. The plaintiff argued that because of a severability clause in the statute, the disclosure requirement nevertheless applied. It contended that partial application of the statute was mandated by the severability clause. We held that this was not the intention of the General Assembly. We do not believe *Sheffield* or *Andrews* is authority for the proposition that a severability clause is not conclusive as to the intention of the General Assembly.

Even assuming *arguendo* that the parties are correct, looking beyond the severability clause and at the entire act to determine the

will of the General Assembly does not help the plaintiff. The General Assembly has said by the severability clause that the unconstitutional part of the statute should be severed. The parties have made good arguments as to why it should not be severed, but they do not overcome the plain meaning of the statute. We affirm that part of the opinion of the Court of Appeals which holds that the unconstitutional part of N.C.G.S. § 105-203 be severed. *Fulton Corp. v. Justus*, 110 N.C. App. at 504, 430 S.E.2d at 501.

[2] We reverse that part of the opinion of the Court of Appeals which holds that the rule of this case should not be applied retroactively. *Id.* at 504-05, 430 S.E.2d at 501-02. In reaching this result, the Court of Appeals relied on our opinion in *Swanson v. North Carolina*, 329 N.C. 576, 407 S.E.2d 791, *on reh'g*, 330 N.C. 390, 410 S.E.2d 490 (1991). On 18 June 1993, three days after the Court of Appeals decided this case, the United States Supreme Court handed down *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 125 L. Ed. 2d 74 (1993). Ten days later, the Supreme Court issued an order vacating our opinion in *Swanson* in light of *Harper*. *Swanson v. North Carolina*, 509 U.S. 916, 125 L. Ed. 2d 713 (1993). The United States Supreme Court held in *Harper* that its application of a rule of federal law requires every court to give retroactive effect to that decision. We are thus required by *Harper* to apply the law retroactively in this case. Whether to enforce the tax as to all shareholders is within the province of the General Assembly.

The General Assembly may forgive this tax if it so chooses. We do not have the authority to do so.

We affirm that part of the decision of the Court of Appeals which holds that the unconstitutional part of N.C.G.S. § 105-203 must be severed and the balance of the section enforced. We reverse that part of the decision which holds that the rule of this case should not be enforced retroactively.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Justice ORR dissenting.

The majority applies a plain-meaning analysis to the statute in question and concludes that the taxable percentage deduction contained in N.C.G.S. § 105-203 should be severed and the remainder of the statute upheld as applied. The opinion states that "[t]he General Assembly has said by the severability clause that the unconstitutional

part of the statute should be severed." However, this Court has rejected such a plain-meaning analysis in determining whether an unconstitutional provision may be severed and the remainder of the statute upheld. In *State ex rel. Andrews v. Chateau X, Inc.*, 296 N.C. 251, 250 S.E.2d 603 (1979), *judgment vacated on other grounds*, 445 U.S. 947, 63 L. Ed. 2d 782 (1980), this Court prescribed the utilization of a two-part test for deciding the issue of severability:

> To determine whether the portions are in fact divisible, the courts first see if the portions remaining are capable of being enforced on their own. They also look to legislative intent, particularly to determine whether that body would have enacted the valid provisions if the invalid ones were omitted.

*Id.* at 259, 250 S.E.2d at 608. Because I believe that the majority's holding in this case is contrary to the intent of the North Carolina legislature, I respectfully dissent.

In *State v. Waddell*, 282 N.C. 431, 194 S.E.2d 19 (1973), this Court also addressed the issue of severability and enunciated the following principle:

> "If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the legislature intended them to take effect in their entirety, it follows that if the whole cannot be carried into effect, it will be presumed that the legislature would not have passed the residue independently, and accordingly, the entire statute is invalid."

*Id.* at 442, 194 S.E.2d at 27 (quoting 16 Am. Jur. 2d *Constitutional Law* § 186 (1964)). In support of our position in the present case, the Court in *Waddell* went on to note that " '[w]hen exceptions, exemptions, or provisos in a statute are found to be invalid, the entire act may be void on the theory that by striking out the invalid exception the act has been widened in its scope and therefore cannot properly represent the legislative intent.' " *Id.* at 443, 194 S.E.2d at 27 (quoting J.G. Sutherland, *Statutes and Statutory Construction* § 2412 (Frank E. Horack, Jr., ed., 3d ed. 1943)).

**FULTON CORP. v. FAULKNER**

[345 N.C. 419 (1997)]

In this case, as the remaining intangibles tax on stock is clearly capable of standing on its own, it is an examination of the legislative intent which compels the conclusion that the taxable percentage deduction is not severable. Although the presence of a severability clause provides some guidance as to legislative intent, *State ex rel. Andrews v. Chateau X, Inc.*, 296 N.C. at 260, 250 S.E.2d at 609, it is not conclusive. In *Sheffield v. Consolidated Foods Corp.*, 302 N.C. 403, 276 S.E.2d 422 (1981), this Court discussed the presence of a severability clause and commented that

> [p]laintiffs' reliance on the severability clause is misplaced. While the severability clause obviously protects other provisions of the Act from invalidity due to a finding that one or more provisions are invalid, a severability [clause] is relevant to a decision only when the validity of a *particular* provision of the Act is at issue. Here, the inapplicable provisions of G.S. 78B-3 remain relevant to our consideration *in determining legislative intent* with respect to the application of the Act as a whole to open market purchases. Clearly in interpreting the legislative intent, we cannot ignore all the provisions of the Act simply because it contains a severability clause common to most statutes enacted by our Legislature.

*Id.* at 421, 276 S.E.2d at 434.

In determining that the severability clause could not be applied in *Sheffield*, the Court applied the following well-established canon of statutory construction:

> "In order to discover and give effect to the legislative intent we must consider the act as a whole, having due regard to each of its expressed provisions; for there is no presumption that any provision is useless or redundant. That the act consists of several sections is altogether immaterial on the question of its unity. 'The construction of a statute can ordinarily be in no wise affected by the fact that it is subdivided into sections or titles. A statute [is] passed as a whole and not in parts or sections and is animated by one general purpose or intent. Consequently the several parts or sections of an act are to be construed in connection with every other part or section and all are to be considered as parts of a connected whole and harmonized, if possible, so as to aid in giving effect to the intention of the lawmakers.' "

*Id.* at 421-22, 276 S.E.2d at 434 (quoting *Jones v. Board of Educ.*, 185 N.C. 303, 307, 117 S.E. 37, 39 (1923) (citation omitted)). The Court

**FULTON CORP. v. FAULKNER**

[345 N.C. 419 (1997)]

concluded that "[w]e will not apply the severability clause to vary and to contradict the express terms of a statute, for we cannot believe the Legislature intended such a result." *Id.* at 422, 276 S.E.2d at 434.

In the present case, the taxable percentage deduction is contained in the provision of the intangibles tax which applies to stocks. N.C.G.S. § 105-203 provides in pertinent part:

All shares of stock . . . owned by residents of this State or having a business, commercial, or taxable situs in this State on December 31 of each year, with the exception herein provided, shall be subject to an annual tax, which is hereby levied, of twenty-five cents (25¢) on every one hundred dollars ($100.00) of the total fair market value of the stock on December 31 of each year less the proportion of the value that is equal to:

(1) In the case of a taxpayer that is a corporation, the proportion of the dividends upon the stock deductible by the taxpayer in computing its income tax liability under G.S. 105-130.7 . . . .

(2) In the case of a taxpayer that is not a corporation, the proportion of the dividends upon the stock that would be deductible by the taxpayer, if the taxpayer were a corporation, in computing its income tax liability under the provisions of G.S. 105-130.7(1), (2), (3), (3a), and (5) . . . .

N.C.G.S. § 105-203 (1992) (repealed 1995). In *Fulton Corp. v. Justus*, 338 N.C. 472, 450 S.E.2d 728 (1994), this Court explained the procedure involved in calculating the intangibles tax on stock as follows:

Thus, the intangibles tax on stock is computed in the following manner: the greater the percentage of the issuing corporation's total income which is allocated to and taxed in this state the more dividend income from that corporation a corporate shareholder is allowed to deduct and the less intangibles tax the shareholder pays. The amount by which the intangibles tax against the shareholder is reduced, therefore, is directly related to the amount of the issuing corporation's income which is allocated to and taxed in this state. If 70% of the issuing corporation's income is allocated to North Carolina, then 70% of the dividends on that corporation's stock are deductible by the corporate shareholder as income, the stock's value for intangibles tax purposes

is reduced by 70%, and the intangibles tax thereby decreased by 70%.

*Id.* at 475, 450 S.E.2d at 730. For a more detailed discussion of the application of the intangibles tax on stock, see *Fulton v. Justus*, 338 N.C. 472, 450 S.E.2d 728. Because of the process involved in calculating the intangibles tax on stock, the elimination of the taxable percentage deduction would subject all stock in North Carolina companies to a full tax burden under N.C.G.S. § 105-203.

Further, because plaintiff in this case is a corporate taxpayer, the majority addresses only N.C.G.S. § 105-203(1), the taxable percentage deduction for stock owned by corporations. However, as the Secretary of Revenue's brief notes, the constitutional infirmity in N.C.G.S. § 105-203(1) is also present in N.C.G.S. § 105-203(2), the taxable percentage deduction for stock owned by individuals. Thus, if the taxable percentage deduction which applies to corporations must be severed, it follows that the taxable percentage deduction which applies to stock owned by individuals must also be severed. Under the logic of the majority's decision, excising the discriminatory deduction would eliminate the only unconstitutional feature of N.C.G.S. § 105-203. This would result in the remainder of N.C.G.S. § 105-203 becoming a constitutional tax on all shares of stock owned by corporations and individual taxpayers of North Carolina. Thus, the tax would apply not only to stock in publicly traded companies from around the world, but also to every small, incorporated business in our state. The full tax would also apply to corporate shareholders and individual stockholders. To contend that the legislature would have "passed the residue independently" is to defy the practical and political reality of the impact of such a tax.

When the General Assembly enacted the intangibles tax on stock in 1937, the shares of all corporations that paid taxes in North Carolina were excluded. Act of Jan. 6, 1937, ch. 127, sec. 706, 1937 N.C. Public Laws 170, 331 (an act to raise revenue). It was in 1939 that the General Assembly narrowed the exclusion to the proportion of tax the corporation paid in North Carolina. Act of Mar. 24, 1939, ch. 158, sec. 705, 1939 N.C. Public Laws 176, 359 (an act to raise revenue). In the portion of N.C.G.S. § 105-203 that levies the tax, the 1939 General Assembly stated that "[a]ll shares of stock . . . owned by residents of this State . . . , *with the exceptions herein provided,* shall be subject to an annual tax." *Id.* (emphasis added). The remainder of the statute then listed the exceptions, including the taxable percentage

**FULTON CORP. v. FAULKNER**

[345 N.C. 419 (1997)]

deduction on all shares of stock owned by corporations and individual taxpayers in North Carolina. Thus, the General Assembly has always manifested its intent that the scope of the intangibles tax on shares of stock be narrowed by these exceptions.

Severing the taxable percentage deduction as the majority opinion has done contravenes the intent of the legislature because it expands the scope of N.C.G.S. § 105-203. By severing the deduction, not only publicly traded shares of stock but also shares of stock in closely held corporations which have never before been subject to the intangibles tax on stock are now subject to such taxation.

Further evidence that the majority's decision contravenes the intent of the legislature can be found in the repeal of the intangibles tax in its entirety—including N.C.G.S. § 105-203—which became effective on 1 January 1995. Act of Jan. 25, 1995, ch. 41, sec. 1(b), 1995 N.C. Sess. Laws 59, 60 (an act to repeal the intangibles tax and to reimburse local governments for their resulting revenue loss). In the Legislative Research Commission's Report to the General Assembly, the Commission expressed three reasons for repealing the intangibles tax:

> First, many consider it an unfair tax because, unlike tangible property, intangible property does not require local government services and thus should not be subject to tax. Second, many also believe the tax has a negative effect on economic development, causing corporate executives, retirees, and wealthy individuals to leave the State or to decide against moving into the State. *Third, if the United States Supreme Court overturns the North Carolina Supreme Court's decision and agrees with the court of appeals that the taxable percentage deduction is invalid, the result would be a tax increase for many taxpayers, particularly individuals who own small, in-State businesses.*

Legislative Research Comm'n, Revenue Laws, Report to the 1995 Gen. Assembly of N.C., at 97 (1995) (emphasis added). Because of the repeal of North Carolina's intangibles tax, N.C.G.S. § 105-203, the legislature also amended N.C.G.S. § 105-275, which classifies property that is excluded from the tax base and includes, *inter alia*, "[s]hares of stock, including shares and units of ownership of mutual funds, investment trusts, and investment funds." N.C.G.S. § 105-275(31c) (1995). The explicit exemption of stock from taxation in the General Statutes clearly illustrates the intent of the legislature.

Thus, although a severability clause is contained in the statute, that alone does not determine that the constitutional portion should remain. Clearly, the legislature did not intend that the scope of N.C.G.S. § 105-203 be broadened. As this Court has recognized, invalidation of some exceptions or exemptions may require an entire statute to fail if severing the invalid provisions would widen the scope of the statute beyond the legislature's intended coverage. *State v. Waddell*, 282 N.C. at 443, 194 S.E.2d at 27. This is exactly what severing the taxable percentage deduction and upholding the residue of the tax would do in the present case. Therefore, I conclude that the majority is in error and would agree with both the Secretary of Revenue and the corporate plaintiff that the entire tax must fail and that plaintiff is therefore entitled to a refund.

Justices FRYE and LAKE join in this dissenting opinion.